The AETNA CASUALTY AND SURETY
COMPANY, Appellant,

v.

Theodore C. BRUNS, Appellee.

No. 11962.

Court of Civil Appeals of Texas,
Austin.

Feb. 7, 1973.

Rehearing Denied Feb. 28, 1973.

John Coates, Barry Bishop, Clark, Thomas, Harris, Denius & Winters, Austin, for appellant.

Bob Gibbins, Gibbins & Spivey, Austin, for appellee.

O'QUINN, Justice.

The principal question to be decided in this appeal is whether the appellee, a workman, had good cause for delay in filing his claim for injury under Article 8307, section 4a, (Vernon's Ann.T.S.) of the Texas Workmen's Compensation Law.

The jury found that appellee delayed filing his claim in reliance upon representations of the employer's manager of the office building where appellee worked that all necessary papers in connection with the claim would be filed for appellee, and that such reliance was good cause for the workman's delay in filing his claim.

Appellant, The Aetna Casualty and Surety Company, filed a motion for judgment *non obstante veredicto*, which the trial court overruled. The court entered judgment for appellee, Theodore C. Bruns, awarding total and permanent compensation benefits, based upon the jury verdict.

Appellant brings four points of error, the first three directed to the question of good cause and the fourth pertaining to the overruling of the company's motion for continuance. Appellant's position under the first three points is that good cause is absent as a matter of law and the jury findings are not supported by the evidence. Under the fourth point appellant insists it was error to force the company to trial

without opportunity to present the "live testimony" of its only medical witness.

We will overrule all points of error and affirm the judgment of the trial court.

■ Bruns started working for the International Life Building in Austin in 1961, and late in March of 1965 Bruns was injured while lifting an electric motor. Bruns' injury was in the lower part of his back below the belt. He left the roof of the building, where the injury occurred, and went downstairs to the engine room, but was unable to continue working. Bruns' relief workman "came early" and Bruns went home. After home treatment and rest, Bruns returned to work next morning, but was unable to work and called for his wife, who notified "the relief" and took Bruns home. The following morning Bruns consulted a Dr. Wood at Marble Falls.

The sequence of events thereafter and the dates of their occurrence prior to May 11, 1965, are not clear from the record, but it appears undisputed that shortly after the accident, Bruns told Charles Garner, manager of the building, about his injury, and Garner sent Bruns to see a Dr. Griffin in Austin. At the request of Dr. Griffin, Bruns was sent to a hospital on May 11, 1965, and Bruns did not return to work until July 5, 1965.

In a conversation with Garner, shortly after the accident, Bruns talked to Garner about filing a workmen's compensation claim about his bills. Bruns testified that Garner told him to go to the hospital "like Dr. Griffin recommended and that everything was taken care of and that he [Garner] filed what needed to be filed." Bruns stated that he relied on Garner's representations that he would or had filed all necessary claims in behalf of Bruns' workmen's compensation benefits. Another employee of the building testified that he was present and heard the conversation between Bruns and Garner, and that he heard Garner tell Bruns that Garner would take care of the Bruns claim. The record

shows that Bruns' education is limited to the sixth grade and that he had never before filed any claim for workmen's compensation.

It is uncontroverted that Garner, in addition to being manager of the building where Bruns was employed in maintenance work, was an insurance agent who represented appellant insurance company and as its agent wrote the policy of workmen's compensation that covered Bruns as an employee of International Life Building.

Bruns was seen by Dr. Griffin about sixty times between the first visit in May of 1965 until July 7, 1966, when Dr. Griffin released the patient. Appellant company paid all of Bruns' hospital bills, as well as all charges by Dr. Griffin and by Dr. Wood, and all bills incurred at pharmacies. In addition, appellant paid Bruns eight weeks of compensation benefits while he was not working. Bruns testified that he returned to work in July of 1965 because he needed earnings to support his family consisting of his wife and three minor children. The bills Bruns incurred were forwarded by Garner, the building manager, to appellant for payment.

After being released by Dr. Griffin in July of 1966, Bruns went to Dr. Lewis, who saw Bruns more than sixty times, and in December of 1966 Bruns became a patient of Dr. Love who eventually saw Bruns more than 100 times. Some of these visits to Dr. Love were for treatment of a knee injury occurring subsequent to Bruns' back injury and not related to this suit. Dr. Love testified at the trial in November of 1971 that Bruns was still under treatment for injury to his back and that after six years Bruns continued to suffer from a nerve involvement in the lower back, a condition the doctor believed was permanent in nature. Although Bruns returned to work in July of 1965, he has never been able to perform the same tasks he accomplished prior to the back injury, especially tasks requiring lifting and other movements involving the back.

Early in January of 1968, after Bruns had asked Garner to get the bills of Dr. Lewis and Dr. Love paid, Bruns was told that his signature would be needed and that the informant thought he could get the money for Bruns. When Bruns "glanced over and seen something and it said 'release,'" he refused to sign. A second attempt to get a release from Bruns was made on February 21, 1968, by M. Alvin Pace, appellant's claim agent. At that time Bruns learned that Garner had not filed a claim in Bruns' behalf for workmen's compensation benefits, as had been represented to Bruns shortly after the accident in 1965.

Bruns then consulted counsel, and the claim for compensation was filed on February 28, 1968, about a week later.

Pace testified that he had had several conversations with Bruns prior to efforts to get a release, and had told Bruns that appellant would pay part of the Dr. Lewis bill, but did not refuse unqualifiedly to pay any of Bruns' medical bills. Garner testified that in May of 1965, after it became evident Bruns needed to be hospitalized, Bruns talked to Garner about necessary forms and whether his bills and his claim would be taken care of in connection with the injury Bruns suffered while lifting the electric motor. As stated earlier, both Bruns and a fellow employee testified that Garner told Bruns he would file all necessary claims for workmen's compensation benefits.

Article 8307, section 4a, of the Texas Workmen's Compensation Act, provides that no proceeding for compensation under the Act shall be maintained unless notice of the injury be given within thirty days after the injury and a claim made for compensation within six months. The only exception to this requirement is stated in the statute:

"For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

The statute does not define good cause, nor does it fix a standard for determining meritorious cases. Trial courts and intermediate appellate courts are bound by the rule the Supreme Court stated in Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370, 372 (1948).

In *Hawkins* the Supreme Court held that the test for existence of good cause for not filing a claim for compensation ". . . is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion." (207 S.W.2d 372, col. 1, and cases cited)

The trial court, in overruling appellant's motion for judgment *non obstante veredicto*, refused to hold as a matter of law that Bruns did not exercise the degree of diligence in the filing of his claim that a reasonably prudent person would have exercised under the same or similar circumstances. The jury was entitled to consider the testimony of Bruns and another building employee that Garner, who was manager of the building where they worked, told Bruns to go to the hospital as the company doctor, Dr. Griffin, directed and that Garner had filed all necessary claims in Bruns' behalf. It is undisputed that after the company doctor released Bruns in July of 1966, more than fifteen months after the injury, Bruns was seen and treated more than 160 times by two other doctors through the latter part of 1966, through all of 1967, and by one of the doctors up to the time of trial in 1971. When Bruns asked that the bills of Dr. Lewis and Dr.

Love be paid by the company, and attempts were made through the company agent to obtain a settlement with Bruns, the claimant for the first time was told that no claim had been filed for him to receive workmen's compensation benefits. The bills of Dr. Lewis and Dr. Love had been placed in the hands of Garner, who had handled earlier bills for forwarding to the company, and when the bills were not paid Bruns spoke to Garner about them, which led to the attempts at settlement and disclosure to Bruns that no claim had been filed for him by Garner.

The jury was entitled to weigh the dual capacity of Garner, a fact known to Bruns, and that Garner had assured Bruns his claim had been filed, followed by payment by the company of all bills sent through Garner, up to the point that the bills of Dr. Lewis and Dr. Love were not promptly paid, without either Garner or Pace, the claim agent, refusing outright to pay any expense incurred by Bruns as a consequence of his injury.

We have examined the evidence in this case with care and have construed it most favorably to claimant, as we are required to do, after which we are unable to say that as a matter of law the claimant failed to use the degree of diligence required. We conclude that there was evidence of probative value to support the jury's answers to the issues having the effect of finding that Garner told Bruns all necessary papers connected with the claim would be filed, that Bruns relied on the representation so as to delay filing his claim, and that such reliance was good cause for the delay until February 28, 1968.

We overrule appellant's points of error under which the position is taken that good cause is absent as a matter of law and that the jury findings are not supported by the evidence.

Appellant contends under its fourth and last point of error that the trial court erred in overruling appellant's motion for continuance and putting the company to trial without the "live testimony" of its only medical witness.

The basis for appellant's motion for continuance was the illness of Dr. Griffin, who was in a hospital at the time of trial and would not be available to testify or to give his oral deposition for one week.

In the order overruling the motion for continuance, the trial court recited that counsel for plaintiff and for defendant agreed that facts set out in the motion for continuance were true, and that counsel for plaintiff agreed to permit defendant [appellant] to introduce in evidence, without objection by plaintiff, "all medical reports in the possession of defendant from Dr. Griffin." Plaintiff below further agreed that counsel for defendant was entitled to advise the jury that Dr. Griffin would not testify because he was ill and confined to a hospital.

The trial court stated in its order overruling the motion for continuance that based upon these facts and representation, the court was of the opinion that the motion should be overruled.

The record shows that the medical reports of Dr. Griffin were introduced in evidence, including Dr. Griffin's final orthopedic report in which he stated, "This patient has been getting along well and is not having much difficulty with his back. Examination today shows that he has no muscle spasms or tenderness over his dorsal or lumbar spine. Motions of this back are normal. Straight leg raising test is negative. Knee jerks and ankle jerks are normal. I do not feel that this patient has any residual effects from his injury and do not feel that he requires any more orthopedic treatment. I do not think permanent disability is to be expected from the injury to his back. He is dismissed from treatment."

The record discloses that the cause had been on the trial court's docket nearly a year, but that no subpoena had been issued

for Dr. Griffin, and that no attempt had been made by appellant to obtain Dr. Griffin's testimony by deposition. Facts establishing due diligence are not set up in the motion for continuance, and the application fails to meet the requirements of Rule 252, Texas Rules of Civil Procedure. Denial of the application does not amount to an abuse of discretion. Hill v. Hill, 423 S. W.2d 943 (Tex.Civ.App.Houston 1st 1968, no writ).

Judgment of the trial court is affirmed.

Affirmed.