**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,**

v.

**Dennis H. THOMAS, Appellee.**

No. 15351.

Court of Civil Appeals of Texas, San Antonio.

Dec. 11, 1974.

Rehearing Denied Jan. 8, 1975.

 

Groce, Locke & Hebdon, Thomas H. Crofts, Jr., Joseph L. Segrato, San Antonio, for appellant.

Broadus A. Spivey, Austin, for appellee.

BARROW, Chief Justice.

Appellant has perfected its appeal from a judgment entered on a jury verdict whereby appellee recovered workmen's compensation benefits for a period of 401 weeks at the rate of $49.00 per week. The jury found that appellee received an injury on or about April 8, 1971, in the course of his employment for the H. B. Zachry Company, which was the producing cause of total and permanent incapacity.

Appellant complains of this judgment and specifically of the order overruling its amended motion for new trial by seventeen assignments of error. The first five points urge that the trial court erred in not granting appellant's motions to withdraw its announcement of ready and to grant a mistrial because of appellee's failure to supplement written interrogatories so as to timely advise appellant that Dr. A. E. Minyard would give expert medical testimony on behalf of appellee.

This suit was filed by appellant on February 6, 1973, to set aside the final award of the Industrial Accident Board (Board) entered on January 9, 1973. A cross-action was filed by appellee seeking benefits for total and permanent incapacity. By agreement the parties were realigned so that appellee became plaintiff and appellant became defendant, and they will be hereinafter referred to in this manner. On July 20, 1973, defendant served extensive written interrogatories upon plaintiff including the following interrogatories:

"12. List the names and addresses of all doctors seen by you for any reason whatsoever during the past ten years,

. . . .

34. Have you (or anyone in your behalf) employed anyone to be an expert

witness in the trial of this suit? If so, please state: . . . name. . . . "

In response to Interrogatory No. 12, plaintiff named three doctors, but not Dr. Minyard. In response to Interrogatory No. 34, he answered "no." This response was sworn to on July 30, 1973, and filed on August 8, 1973. Insofar as Dr. Minyard is concerned, these answers were then true and correct in that he did not examine plaintiff until October 22, 1973.

An amendment to Rule 168,[1] effective February 1, 1973, requires a party to supplement his answers under certain circumstances to include information acquired after the answers were made.[2] There is no specific remedy or penalty in the rule for failure to supplement one's answer. The trial court is authorized to assess certain penalties for the refusal to answer an interrogatory, but the authorized penalty of assessment of reasonable expenses or a finding of contempt of court would be inappropriate in most instances where, as here, the name of an expert witness was not given so as to permit discovery proceedings of his testimony.

The case went to trial on November 5, 1973. On the second day of the trial, Dr. Minyard was called as a witness by plaintiff. Defendant promptly filed its motion to withdraw its announcement of ready and for a mistrial or, in the alternative, that Dr. Minyard not be permitted to testify. The motion for a mistrial was re-urged at the conclusion of his testimony and defendant also sought to strike the testimony. Defendant urged in the trial court as a basis for said motion a claim of surprise based on a misrepresentation by plaintiff's attorney rather than a failure to comply with Rule 168. The case was orig-

inally set for trial around the middle of October, 1973. At this time, plaintiff's lead counsel was in trial of a case in another city. Therefore, this case was passed and reset by agreement of the attorneys and approval of the trial court. In the discussion between the attorneys leading up to the agreement to pass the case, plaintiff's attorney assured defendant's attorney that he would not use the additional time to bring in a professional medical witness such as Dr. W—. R—. Plaintiff's attorney advised defendant's attorney at that time that he did not plan to use an expert witness and that he usually relied on lay witnesses in the trial of compensation cases.

Although this agreement was the thrust of defendant's motion for mistrial, it does not now assert same and the oral agreement has no relevance here except as it bears on the question of surprise. See Rule 11, Tex.R.Civ.P. (1967). Nor does defendant charge plaintiff's attorney with bad faith. Plaintiff's attorney is frank to admit that he was not aware of the change in Rule 168, which requires the supplementing of answers. See Coca Cola Bottling Co. v. Mitchell, 423 S.W.2d 413 (Tex.Civ.App.—Corpus Christi 1967, no writ); Sales, Discovery Under the Texas Rules of Civil Procedure, 37 Tex.Bar Journal, 39, 44.

While the interrogatories when considered as a whole are very broad, plaintiff admittedly should have supplemented his answer to Interrogatory No. 34 after he was examined by Dr. Minyard on October 22nd, for the sole purpose of the possible use of Dr. Minyard as an expert witness. Since there is no express sanction provided by the rule for failure to supplement this interrogatory, the question before us is whether the trial court abused its discre-

---

1. All references are to Texas Rules of Civil Procedure.

2. "(1) a party is under a duty seasonably to amend his answer if he obtains information upon the basis of which (a) he knows that the answer was incorrect when made, or (b) he knows that the answer though correct when made is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment; and (2) a duty to supplement answers may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior answers."

tion in not granting a mistrial and in permitting Dr. Minyard to testify. Ebeling v. Gawlik, 487 S.W.2d 187 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); Hankins v. Haffa, 469 S.W.2d 733 (Tex.Civ.App.—Amarillo 1971, no writ); Fisher v. Continental Illinois National Bank & Trust Company of Chicago, 424 S.W.2d 664 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.).

■ We conclude after careful examination of this record that the trial court did not abuse its discretion in refusing to grant a mistrial. It is seen that the medical evidence in this case was very fully developed in discovery proceedings. Plaintiff had been under the care and treatment of two doctors approved by defendant, and defendant was fully aware of plaintiff's physical condition. Dr. Minyard, who saw plaintiff on only one occasion, did not bring any new medical evidence into the case. He simply drew a different conclusion from the results achieved by the treating physicians. Dr. Stool and Dr. Robinson, who had each performed surgery on plaintiff's collarbone as a result of his injury, testified that plaintiff had sustained a permanent partial incapacity of ten percent and twenty-five percent respectively. On the other hand, Dr. Minyard testified that, in his opinion, plaintiff was totally incapacitated as defined by the compensation law. There was little conflict in the findings of the doctors; each just reached a different conclusion from such findings.

Defendant urged to the trial court, and on this appeal, that it was deprived of the valuable right to take the oral deposition of Dr. Minyard. We doubt that it would have had time to take said deposition between the examination on October 22nd and the trial setting. In any event, defendant does not point out now how a deposition would have changed defendant's position. We cannot say that this denial was such as to require a mistrial. The trial court did excuse the jury and give defendant's attorney all the time that he desired to make a background check on Dr. Min-

yard prior to cross-examination. Defendant did not point out at the trial court, or to us, any new medical evidence brought into the case by the testimony of Dr. Minyard. Defendant did not request another physical examination of the plaintiff. Defendant's first five points are overruled.

Defendant urges by his assignments of error Nos. six through ten that there is no evidence or insufficient evidence to support the jury findings that plaintiff was totally and permanently incapacitated after April 8, 1971. The thrust of the argument under these points is that the evidence is uncontradicted that, with the exception of short periods of time following the two operations on his shoulder, plaintiff has been gainfully employed substantially all the time. It is also urged that the injury was confined to plaintiff's left arm.

Plaintiff was a welder for Zachry. He sustained an injury to his left shoulder when he slipped while carrying a heavy bottle of argon. He promptly reported the injury to his foreman and was sent to the company doctor. The company doctor did not testify. On July 6, 1971, Dr. Newsom Stool, an orthopedic specialist, examined plaintiff, and on July 23rd he performed surgery to remove about one-half inch of plaintiff's left collarbone. Dr. Stool testified on behalf of defendant that the injury had resulted in a ten percent permanent partial impairment of the shoulder including the clavicle and scapula. On June 16, 1972, plaintiff was examined by Dr. C. A. Robinson, another orthopedic specialist, and on June 22, 1972, Dr. Robinson surgically removed more of plaintiff's left collarbone. Dr. Robinson testified on behalf of defendant that, in his opinion, plaintiff had sustained a twenty-five percent permanent partial disability of the left upper extremity of the body. Plaintiff's permanent disability is largely based on his inability to freely lift his left arm above sixty degrees. Plaintiff was also examined by Dr. Coyle Williams, an orthopedic specialist, and although Dr. Williams did not testify, it was developed that Dr. Williams gave

plaintiff a thirty percent permanent partial disability to the left upper extremity. All doctors testified that more than a specific injury to the arm was involved.

Plaintiff is a welder by trade and at the time of the accident was certified as such in three categories. He remained in Zachry's employment as a welder until he was let go in November of 1972. Plaintiff's foreman, testifying on behalf of defendant, confirmed plaintiff's testimony that he was not able to perform his regular duties as a welder during this period but was given light work and required to rest frequently. Plaintiff is left-handed and the incapacity to his left upper extremity seriously restricts his ability to properly weld with his left hand. During the eighteen months that he continued to work for Zachry, plaintiff only lost more than a week's work on one occasion and that was following the surgery by Dr. Robinson. He was paid compensation by defendant for the five weeks that he lost at that time. Since leaving Zachry's employment, plaintiff has worked for several different employers and at the time of the trial was working as a carpenter's helper for about half the pay he could earn as a welder. Four co-workers who have worked with plaintiff since he left Zachry's employment testified that he was not able to perform the regular duties of a workman. All these witnesses confirmed that plaintiff was disabled in his left upper extremity which prevented him from performing the usual duties of a workman and placed him at a disadvantage in competing in the labor market.

■ It is settled law that the fact that an employee continues to work after he is injured is not controlling on the question of total and permanent disability, but this is simply one fact to be considered by the jury along with other facts and circumstances introduced into evidence. Home Insurance Co. v. Smith, 482 S.W.2d 395 (Tex.Civ.App.—Waco 1972, no writ); Maryland American General Ins. Co. v.

Leffingwell, 478 S.W.2d 616 (Tex.Civ.App. —Corpus Christi 1972, no writ); Travelers Ins. Co. v. Buffington, 400 S.W.2d 800 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.); Trinity Universal Ins. Co. v. Scott, 342 S.W.2d 348 (Tex.Civ.App.— Forth Worth 1961, writ ref'd n. r. e.).

■ It is clear that when the evidence is examined under the "no evidence" test, there is more than a scintilla of evidence to support the jury findings that plaintiff has been totally and permanently incapacitated as a result of his injury of April 8, 1971. The points complaining of the "factual insufficiency" of such findings are more difficult in that there is substantial medical and lay testimony that plaintiff only sustained a permanent partial incapacity. Nevertheless, there is other evidence to support the jury's conclusion that plaintiff cannot compete in the labor market because of the permanent incapacity to his left upper extremity. We cannot say the jury findings that such incapacity is total and permanent are so against the great weight and preponderance of the evidence as to be manifestly unjust. Defendant's sixth through tenth points are without merit and overruled.

■ Two points complain of the jury finding that the injury occurred on April 8, 1971. This uncertainty was brought about by the fact that the records of the company doctor show that plaintiff was first seen on April 15, 1971, and plaintiff testified that he saw the doctor on the same date he was injured. We consider such conflict as immaterial in that there is no question but that the injury actually occurred on the job and was promptly reported to plaintiff's foreman. Two co-workers were with plaintiff at the time of the accident, and although they were called as witnesses by defendant, they confirmed that the accident occurred in the manner testified to by plaintiff. The company doctor did not testify and therefore the jury was justified in believing that other

records, which show the incident as occurring on April 8, 1971, are correct and that the doctor's records do not reflect the correct date.

■ Defendant asserts by its thirteenth and fourteenth points that there is no evidence or insufficient evidence to support the jury findings that plaintiff had good cause for not filing his claim within six months from the date of injury. The claim was not filed with the Board until June 7, 1972. Plaintiff testified that after he reported the injury to his foreman, he was subsequently advised by the Zachry safety director, in the presence of a representative of the defendant, that it was not necessary to file the claim and that the company would take care of it. Therefore, the claim was not filed by plaintiff until he was told to do so by a representative of the Board. He then promptly filed it. It is seen that at the time the claim was filed, plaintiff was still on the payroll of Zachry and was earning full wages, although he only performed light work. Cf. Allstate Ins. Co. v. King, 444 S.W.2d 602 (Tex. 1969). He did not employ an attorney until about six months after the claim was filed. This record supports the jury finding of good cause for failing to file his claim within six months. Moronko v. Consolidated Mutual Ins. Co., 435 S.W.2d 846 (Tex.1968); Aetna Casualty and Surety Co. v. Bruns, 490 S.W.2d 879 (Tex.Civ. App.—Austin 1973, writ ref'd n. r. e.); Charter Oak Fire Ins. Co. v. Dewett, 460 S.W.2d 468 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.).

■ Two points complain of the admission into evidence of a letter dated March 1, 1972, from the Board to Zachry advising that the Employer's Notice of Injury form had not been filed by Zachry and that it was a violation of the compensation law not to do so. The letter was purportedly offered for the limited purpose of impeaching Zachry's safety director who had testified that he did not know that the notice must be promptly filed by the employer. While we have serious doubts as to the admissibility of this document, any error in the admission of same was harmless in that the Employer's Notice of Injury had already been introduced into evidence without objection, and it shows on its face that it was filed on March 3, 1972.

■ The final point complains of the failure of the trial court to grant a new trial because of jury misconduct. Defendant asserts rather generally that the jury was guilty of misconduct because of improper statements of various jurors during their deliberations. This claim is based on the affidavits of two jurors. These affidavits, along with four controverting affidavits, were considered as evidence at the hearing of the motion for new trial by agreement of the parties. These affidavits are sharply conflicting and, since there are no findings of fact, we must presume on this appeal that the trial court believed the four affidavits submitted by the plaintiff to the effect that there was no misconduct. State v. Wair, 163 Tex. 69, 351 S.W.2d 878 (1961); Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943). No error is seen in the trial court's refusal to grant a new trial particularly when it is seen that the jury verdict was a 10–2 verdict, and the two jurors who gave the affidavits purporting to set forth jury misconduct, were the two who had voted "no" on the verdict.

We have considered all of defendant's seventeen assignments of error and reversible error is not presented by any of same. The judgment of the trial court is therefore affirmed.