**ALLIED FINANCE COMPANY,**
**Appellant,**

v.

**Roque GARZA and Alicia Garza,**
**Appellees.**

**No. 1738.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 30, 1981.

Supplemental Opinion on the
Filing of Remittitur Dec. 30, 1981.

Rehearing Granted Nov. 30, 1981.

H. H. Rankin, Jr. and Sara Nell Langland, Rankin & Kern, McAllen, for appellant.

John Williamson, Texas Rural Legal Aid, Inc., Brownsville, Clyde Farrell, Texas Rural Legal Aid, Inc., Austin, for appellees.

Before NYE, C. J., and BISSETT and YOUNG, JJ.

## OPINION ON SECOND MOTION FOR REHEARING

BISSETT, Justice.

Our opinion and judgment dated August 24, 1981, and our opinion on appellees' first motion for rehearing dated September 28, 1981, are withdrawn and set aside.

This is an appeal by Allied Finance Company from an award of attorney's fees by the Cameron County Court at Law.

The original suit was filed sometime prior to April 11, 1977, wherein Allied Finance Company [hereinafter "Allied Finance"] sued Roque Garza and Alicia Garza [hereinafter "the Garzas"] to recover $936.60, the balance due on a promissory note executed by the Garzas and payable in installments to Allied Finance, and to foreclose its lien on certain collateral. The Garzas filed a general denial and also presented two "affirmative defenses of offset," one under the Federal Truth in Lending Act, and the other under the Texas Consumer Credit Act; the Garzas prayed for a judgment awarding them an offset in the amount of $682.34 for alleged violations under each Act, plus costs and reasonable attorney's fees. Both parties filed motions for summary judgment. On April 11, 1977, the trial court granted Allied Finance's motion and denied the Garzas' motion. A final judgment was rendered which awarded Allied Finance $936.60, plus interest and costs, and foreclosed its security lien on the affected collateral. The Garzas appealed that judgment. This Court, in *Garza v. Allied Finance Company*, 566 S.W.2d 57 (1978, no writ), hereinafter sometime referred to as the "first appeal," handed down its decision and rendered its judgment, wherein: 1) that portion of the trial court's judgment which awarded plaintiff a recovery of $936.60, being the balance due on the note plus interest and costs, was affirmed; 2) that portion of the trial court's judgment which denied the Garzas relief on their motion for summary judgment was reversed, and judgment was rendered in favor of the Garzas for a recoupment of $682.34, which was to be deducted from the amount of money recovered by Allied Finance in its action on the note; 3) that portion of the trial court's judgment which granted foreclosure of certain liens was reversed and judgment was rendered which excluded all references to foreclosure; and 4) that portion of the trial court's judgment relating to attorney's fees for prosecuting the Gar-

zas' claims for damages under the Federal Truth in Lending Act was severed from the remainder of the case and was remanded to the trial court for the purpose of determining the amount which would constitute reasonable attorney's fees under the facts and circumstances of the case. That judgment is final.

On remand, to determine the amount of attorney fees, a verdict was rendered by the jury in favor of the Garzas on that issue. The jury made the following findings: 1) $8,268.00 for legal services "in the preparation and trials including this trial in this Court and the proceedings which have already taken place in the Court of Civil Appeals"; 2) $11,768.00 in the event the case is appealed to the Court of Civil Appeals and the Garzas prevail in that Court; 3) $13,268.00 in the event the Garzas prevail in the Court of Civil Appeals and an application for writ of error is filed by Allied Finance in the Supreme Court of Texas and is refused (for any reason) by the Supreme Court; and 4) $14,768.00 in the event the Supreme Court grants a writ of error and the Garzas prevail in that court.

The judgment decreed:

"It is therefore ordered, adjudged and decreed that Roque Garza and Alicia Garza, have and recover judgment from Allied Finance Company in the sum of $14,-768.00 as attorney fees; and it is the further judgment of the Court that if Allied Finance Company does not appeal this cause, the said judgment should be credited with $6,500.00 as attorney fees, leaving as recovery for attorney fees herein the sum of $8,268.00. It is the further judgment of the Court that if Allied Finance Company appeals this cause to the Court of Civil Appeals and said cause is not carried by appeal or writ of error to the Supreme Court of Texas, that this judgment be credited with the sum of $3,000.00 as attorney fees, leaving as recovery for attorney fees herein the sum of $11,768.00. It is the further judgment of the Court that if Allied Finance Company carries this cause by appeal or writ of error to the Supreme Court of

Texas, but the Supreme Court of Texas declines to review this cause, that this judgment be credited with the sum of $1,500.00 as attorney fees, leaving as recovery for attorney fees herein the sum of $13,268.00 . . . . ''

Allied Finance in its first point of error complains:

"The Trial Court erred in entering a judgment for attorney's fees and cost in excess of the amount of APPELLANT'S judgment and cost that had not already been offset by APPELLEES' recoupment as the same allowed the APPELLEES an affirmative recovery for which this Court has held they were barred by limitations."

Neither of the parties has cited any Texas authority on this point, nor have we found any Texas cases thereon. However, a similar issue was presented for decision in *Plant v. Blazer Financial Services, Inc. of Georgia,* 598 F.2d 1357 (5th Cir. 1979). There, the issue was whether in a Federal Truth and Lending action an award of attorney's fees was subject to setoff against the debtor's outstanding debt to the creditor. Much like the present case, the debtor in *Plant* had partially offset a debt under a note by alleging and proving violations of the Truth in Lending Act. The Court said:

"No discretion is available to the trial court in this matter and the attorney is entitled to the fee that is awarded him regardless of any controversy regarding the underlying debt."

The court discussed purpose of the Truth in Lending Act and the importance of allowing a recovery of attorney's fees in its enforcement. It reasoned that since the allowance of a setoff would, in many cases, relegate the attorney to the resources of the debtor for collection of his fee, such result would hinder the statute's enforcement scheme and remedial objectives if attorney's fees were not allowed the debtor.

For the same reasons that a set off was not allowed in *Plant,* supra, we believe that the attorney's fees awarded in this case should not be limited to the difference between the amount recovered by Al-

lied Finance on the promissory note balance and the amount recovered in recoupment by the Garzas. We have already held in the first appeal that Texas Rural Legal Aid is entitled to a full recovery for their work expended as attorney for the Garzas under the statutory provisions of the Federal Truth in Lending Act. This amount is to be recovered regardless of the amount in controversy in the underlying debt. Congress, in enacting the Truth in Lending Act, envisioned the creation of a system of "private attorney generals" who would be able to aid in the enforcement of the Act. *Sosa v. Fite*, 498 F.2d 114, 121 (5th Cir. 1974). If we were to agree with Allied Finance that attorney's fees in the recoupment action should be limited to the amount of the underlying judgment, then these small amounts in controversy would not be worth the attorney's time. It would effectively render useless our earlier decision in this case allowing a debtor to bring a Truth in Lending action as a defense to a creditor's suit on an underlying debt. Such defenses would not be properly pursued, since the legal fees recoverable would be infinitely small in relation to the work expended. The first point of error is overruled.

■ As its second point of error, Allied Finance claims the amount awarded as attorney's fees should be offset against the outstanding balance of its judgment not heretofore offset. This precise issue was raised, as detailed above, in *Plant v. Blazer Financial Services, Inc. of Georgia*, supra, and decided against the contention of Allied Finance. We agree with the Fifth Circuit's holding in that case, and disallow any offset of attorney's fees on the amount owed on the underlying judgment. The award of attorney's fees is the property of the Texas Rural Legal Aid and is not subject to the amount in controversy. The second point of error is overruled.

■ In its third point of error, Allied Finance asserts that the trial court, a County Court at Law of Cameron County, Texas, did not have jurisdiction to render a judgment for attorney's fees in excess of $5,000.00, since that is its maximum juris-

dictional "amount in controversy." We disagree. The initial pleadings of the parties were well within the jurisdiction of the Cameron County Court at Law. The general rule, as stated in *Flynt v. Garcia*, 587 S.W.2d 109 (Tex.1979) is "where jurisdiction is once lawfully and properly acquired, no subsequent fact or event in the particular case serves to defeat that jurisdiction." See also *Haginas v. Malbis Memorial Foundation*, 163 Tex. 274, 354 S.W.2d 368 (1962); *Isbell v. Kenyon-Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762 (Tex. Comm'n. App. 1924, opinion adopted). The award of attorney's fees in excess of $5,000.00, therefore, did not deprive the Cameron County Court at Law of its jurisdiction. The third point of error is overruled.

Allied Finance further contends in its fourth point of error that the expert testimony of Richard Arroyo should not have been allowed by the trial judge, since an interrogatory naming Arroyo as an expert witness was amended only three days before trial. The trial judge, in allowing such testimony, complains Allied Finance, constituted an abuse of discretion.

■ In reviewing an action of a trial judge concerning a failure or refusal to comply with discovery orders, any action in this regard may be set aside only upon a showing of a clear abuse of discretion. *Texas Employers Insurance Association v. Thomas*, 517 S.W.2d 832 (Tex.Civ.App.— San Antonio 1974, writ ref'd n.r.e.); *Hankins v. Haffa*, 469 S.W.2d 733, 737–38 (Tex. Civ.App.—Amarillo 1971, no writ).

■ In the case at bar, Allied Finance was notified before trial that the expert witness on attorney's fees would be Mr. Arroyo. This notice was given on Friday and the parties went to trial on the next Thursday. Allied Finance did not attempt to take Mr. Arroyo's deposition. Nor did it attempt to take the deposition of the previous expert witness listed by the Garzas concerning the matter of attorney's fees. The basis of Mr. Arroyo's testimony, as well as the pleadings filed in the lawsuit by Texas Rural Legal Aid, were available to

Allied Finance at all pertinent times. The trial judge did not abuse his discretion in allowing Mr. Arroyo to testify as an expert witness. The fourth point of error is overruled.

 Allied Finance, in its sixth, seventh and eighth points of error, says that the judgment is against the overwhelming weight and preponderance of the evidence, that there is no evidence to support the judgment, and that the evidence is factually insufficient to support the judgment. When considering "no evidence" points, we can consider only the evidence and inferences tending to support the jury findings or the judgment awards, as the case may be, and must disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). In reviewing "factually insufficient evidence" points we consider all the evidence, including any evidence contrary to the jury findings. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980).

 Mr. Richard Arroyo, an attorney and member of the Cameron County Bar Association, testified that he had been a practicing lawyer in Cameron County, Texas, since 1975, and was, at all times relevant to this appeal, familiar with the charges made by Cameron County lawyers for legal services performed.

There is no evidence that the attorneys for the Garzas were employed on a contingent fee basis or on a contract fee basis. The only evidence relating to any basis for recovery of attorney's fees is that the Garzas' attorneys were entitled to compensation based on an hourly charge for the services rendered. Mr. Arroyo testified that a reasonable attorney's charge for legal services, performed in Cameron County, Texas, based on an hourly charge, is fifty dollars per hour for services rendered in 1977, and seventy-five dollars per hour for services rendered in 1978, 1979 and early 1980. That testimony was not challenged.

Mr. Arroyo also testified that, in his opinion, the sum of $8,458.00 would be a reasonable fee for all legal services rendered by the Garzas' attorneys in prosecuting their claims for damages under the Federal Truth in Lending Act to January 18, 1980, when the trial on the issue of attorney's fees was completed, excluding any travel time, which, he said, should be $1,800.00. He further testified that a reasonable attorney's fee in the event of an appeal to the Court of Civil Appeals would be an additional $3,000.00; that in the two-step procedure in moving the case to the Supreme Court, a reasonable fee for filing an application for a writ of error would be an additional $2,500.00; and that an additional $2,500.00 would be a reasonable fee if the Supreme Court granted the writ and the Garzas ultimately prevailed.

With respect to the number of hours expended by the attorneys for the Garzas, Mr. Arroyo said:

"A. My estimate from looking at the records is that when this case was in this court originally, there are thirty-four hours just on those issues that the Court of Appeals ruled that should be considered.

Q. All I want is the total.

A. Okay. And then I estimated there are one hundred and six hours in the appeal; however, I estimated that two-third of those hours were necessary again on the issue involved here."

\* \* \* \* \* \*

"Q. Do you have an exact number?

A. One hundred seventy-three hours."

In summary, Mr. Arroyo estimated that 106 hours were spent by the Garzas' attorneys in prosecuting the Garzas' claims for damages under the Federal Truth in Lending Act from the inception of the case through the first appeal, and 67 hours on the preparation and trial of the issue of attorney's fees, following the remand.

Mr. Arroyo said that his opinion as to the matters inquired of him were based on a review of "the pleadings that were filed herein and looking at the briefs for the appellant," at "the docket," and "looking at

the records." He said that he placed what he "thought is the amount of time it would take to draft each of those pleadings, including the back up work for them and the time for hearing that would be involved."

There is a stipulation and also evidence in the record, which, when taken together, differs with the "estimates" of the hours spent by the attorneys for the Garzas in prosecuting the claims for damages for which attorney's fees may be awarded. As stated above, Mr. Arroyo estimated that a total of "173 hours" were devoted by the Garzas' attorneys in prosecuting their claim for damages under the Federal Truth in Lending Act. It was stipulated by counsel for the Garzas and for Allied Finance that Mr. Howard Graham, the leading counsel for the Garzas from the inception of the case up to and including the first appeal, spent 35 hours "at the trial court level" and 45 hours "doing research on the brief" with respect to the first appeal. It is conclusively established by the evidence that Mr. Clyde Farrell, also an attorney for the Garzas, argued the case before this Court in the first appeal and that his travel time in connection with that appeal was 12 hours. Mr. Farrell also filed a supplemental brief in the Court of Civil Appeals, and assisted Mr. John Williamson, the leading counsel for the Garzas following the remand. It is undisputed that he spent 13 hours at the trial on the issue of attorney's fees. There is no factual evidence concerning the number of hours devoted by Mr. Williamson on the claim for attorney's fees, although the record shows the trial on that issue lasted two days.

There is evidence which supports the judgment. The judgment is not against the overwhelming weight and preponderance of the evidence. The sixth, seventh and eighth points of error are overruled.

■ Allied Finance, in its fifth point of error, complains that the judgment for attorney's fees in the amount of $14,768.00 is unreasonable and excessive. We agree that the amount is excessive.

According to Mr. Arroyo's "estimates," the attorneys for the Garzas spent 34 hours on the prosecution of the Garzas' claims for damages under the Federal Truth in Lending Act and 106 hours in the first appeal insofar as that issue is concerned. The total is 140 hours. On the other hand, it was stipulated that Mr. Graham, the attorney for the Garzas at the original trial spent 35 hours in preparing for trial and in trying the original case; he also spent 45 hours in preparing and filing the briefs in the first appeal. Mr. Farrell, an attorney for the Garzas, argued the case before this Court in the first appeal; 12 hours were spent in traveling and in arguing the case. The services of Mr. Graham and Mr. Farrell total 92 hours.

Up until April 20, 1978, when our opinion in the first appeal was handed down, the case consisted of Allied Finance's suit on the note and foreclosure of liens and the Garzas' actions under the Federal Truth in Lending Act and under the Texas Consumer Credit Act, wherein they sought a recovery of damages for violations under the two Acts and recovery of attorney's fees. The case, considering the several actions and the types of relief prayed for, was complex. The 34 hours at the trial level and the 45 and 12 hours at the appellate level, devoted by the attorneys for the Garzas, were spent (in 1977) in attempting to set aside the judgment of the trial court in every respect. The Garzas were successful in setting aside the foreclosure of liens and in obtaining a reversal and rendition with respect to the action brought by them under the Federal Truth in Lending Act. Mr. Arroyo's estimate that 67 hours were spent by the attorneys for the Garzas following the remand was made despite the fact that in the first appeal this Court held that the Garzas were "entitled to receive a recoupment of $682.34," and that "defendant's counsel in this case, Texas Rural Legal Aid, Inc., is authorized to receive attorney's fees in Truth in Lending cases, the same as private counsel." The issue as to whether the Garzas were entitled to reasonable attorney's fees was settled at the time of remand. All that the Garzas had to do was prove reasonable attorney's fees. In so doing, they were

required, since they elected to proceed under the hourly charge basis, to prove the usual and contemporary charges per hour in Cameron County at the relevant times, and then to establish by competent evidence, how many hours were reasonably necessary to prepare and try the issue relating to the award of attorney's fees. There was nothing complex about the case following the remand. The complexities which existed in the case were resolved and settled by this Court in its judgment and opinion in the first appeal.

We conclude that the awards of $14,768.00 for attorney's fees are excessive. We will suggest a remittitur.

█ Attorney's fees, where recoverable by law, must be reasonable under the circumstances of each case and bear some reasonable relationship to the amount in controversy or the amount recovered. *Argonaut Ins. Co. v. ABC Steel Products Co., Inc.*, 582 S.W.2d 839, 883 (Tex.Civ.App.— Texarkana 1979, writ ref'd n.r.e.); *Republic National Life Insurance Company v. Heyward*, 568 S.W.2d 879, 887 (Tex.Civ.App.— Eastland 1978, writ ref'd n.r.e.); *Union National Life Insurance Company v. Reese*, 476 S.W.2d 928 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

█ A court of appeals has the authority to look at the entire record in the case on appeal, and to view the matter of reasonable attorney's fees in the light of the evidence presented on the matter, the record in its entirety, the amount in controversy, and to draw on the common knowledge and experiences of the justices of the court as lawyers and justices. *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex. Comm'n App. 1928, holding approved); *Knopf v. Standard Fixtures Co., Inc.*, 581 S.W.2d 504 (Tex.Civ.App.—Dallas 1979, no writ).

The amount recovered by the Garzas as damages for their claims under the Federal Truth in Lending Act was $682.34. That sum was recovered in the first action, not in the instant case. There can be no doubt but that the Garzas were well represented by their attorneys. However, if their attorneys expended a total of 173 hours solely on the Federal Truth in Lending Act aspect of the case, then they overprepared, overtried and overbriefed that area of the litigation, and Allied Finance should not be held liable for such overproduction, overtrying of the case, or overbriefing in the appellate court. *Republic National Life Insurance Company v. Heyward*, supra; *Argonaut Ins. Co. v. ABC Steel Products Co., Inc.*, supra. The greater proportion of the preparation was undoubtedly done prior to the trial of the instant case which launched the present appeal. We conclude that the amount of money awarded for attorney's fees is unreasonable and excessive. The fifth point of error is sustained.

All other points of error have been considered. They are overruled.

Since the only reason for a reversal of the trial court's judgment is the excessiveness of the awards for attorney's fees, we indicate the amounts by which we hold the fees excessive, and allow the Garzas a reasonable time within which to file a remittitur of such excessive amounts of money. See Rule 440, T.R.C.P.; *Carter v. Texarkana Bus Company*, 156 Tex. 285, 295 S.W.2d 653 (1956).

The award of $14,768.00 for attorney's fees is excessive by $7,000.00. If the Garzas, within fifteen days from the date of this opinion, file a remittitur in this Court in the total amount of $7,000.00, we will reform the judgment, and as reformed, affirm the same. Otherwise, the judgment will be reversed and the cause remanded.

The $7,000.00 remittitur shall reflect remittitur of: 1) $3,500.00 from the award of $8,268.00 for attorney fees in representing the Garzas on the Federal Truth in Lending action through both trials and the first appeal; 2) $1,500.00 from the award of $3,000.00 for preparation and perfecting an appeal to the Court of Civil Appeals in the event Allied Finance appeals from the judgment rendered by the trial court on the issue of attorney's fees; and 3) $2,000.00 from the award of $3,500.00 for representing the Garzas in the event Allied Finance

applies to the Supreme Court for a writ of error, regardless of the action by that Court on the application.

Costs are assessed 50% against the appellant, Allied Finance Company, and 50% against appellees, Roque Garza and Alicia Garza.

The judgment of the trial court is AFFIRMED on condition of REMITTITUR.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that the Garzas (appellees) remit the sum of $7,000.00 as set forth in the original opinion. The Garzas through their attorney have filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the Garzas so that the amount of the judgment against the Allied Finance Company (appellant) is reduced: 1) $4,768.00 as attorney's fees if Allied Finance Company does not appeal the judgment to the Court of Civil Appeals; 2) to the sum of $6,268.00 as attorney's fees if Allied Finance Company appeals the judgment to the Court of Civil Appeals; and 3) to the sum of $7,768.00 as attorney's fees if Allied Finance Company applies to the Supreme Court for a writ of error.

The costs of this appeal are taxed one-half to the Garzas and one-half to Allied Finance Company.

The judgment as herein REFORMED is hereby AFFIRMED.