MEMORANDUM OPINION
Memorandum Opinion by Justice Benavides *21 In this commercial litigation case, appellants Sky View at Las Palmas, LLC ("Sky View") and Ilan Israely assert that: (1) they are entitled to a settlement credit to offset the jury's verdict of $2,665,832.72, plus pre-and post-judgment interest, under the one-satisfaction rule; and (2) the award of attorney's fees in appellee Roman Geronimo Martinez Mendez's ("Martinez") favor was excessive and should be reduced. We affirm.
I. BACKGROUND
Sky View was a company formed to purchase and develop a 38.416-acre tract of commercial property in Hidalgo County ("the property"). At the time, Sky View was owned by only two members: Israely and Abraham Gottlieb. Israely is an appellant along with Sky View in this case, but Gottlieb is not.
In 2008, Sky View sought to purchase the property from M Construction, Ltd. ("M Construction") for $6.5 million. In order to finance this purchase, Sky View obtained a $4 million promissory note and deed of trust from Texas State Bank (later known as Compass Bank). After purchasing the property, Israely testified that Sky View sought a second construction loan from Texas State Bank for $9 million in order to begin "grading" the property. According to Israely, Texas State Bank officials told him that the loan would take "a few months" to finance. In the interim, Sky View sought what witnesses called a "bridge loan" to infuse capital into the development while Sky View awaited financing on the second loan from Texas State Bank. In order to finance the bridge loan, Israely, through a connection made by Hugo Martinez[2] of M Construction, approached appellee Martinez. After some negotiation, Martinez and Sky View began negotiating the terms for the $1.275 million loan ("the bridge loan").
To help facilitate this agreement with Sky View and Israely, Martinez engaged the legal services of the Law Offices of Kittleman Thomas Gonzales ("KTG") and San Jacinto Title Company ("San Jacinto") to prepare the loan documents and close on the transaction. On April 14, 2008, Martinez agreed to loan Sky View a principal of $1.275 million at an annual interest rate of eighteen percent, secured by a second lien deed of trust on the property for Martinez's benefit. According to the note, all principal and interest owed was due to Martinez on October 14, 2008. Evidence also showed that Israely provided Martinez with a personal guaranty on the loan. By October of 2008, Sky View had defaulted on the note and informal negotiations took place between Martinez and Sky View regarding payment on the note. More than a year and a half after the default passed without resolution between the parties. As a result, Martinez hired the Law Offices of Walker and Twenhafel, LLP ("WT") to sue Sky View, Israely, and Gottlieb for payment.
Over a nearly four-year period of litigation, Martinez added additional defendants to his lawsuit, including causes of action for: (1) negligence, fraud, and conspiracy against San Jacinto; (2) breach of contract, *22 unfair settlement practices, and negligence against Fidelity, who issued a title insurance policy to Martinez through San Jacinto; (3) legal malpractice, breach of fiduciary duty, negligence, Texas Deceptive Trade Practices Act Violations, and breach of contract against KTG; and (4) legal malpractice against WT for various acts and omissions, including allowing Compass Bank to foreclose on the property due to Sky View's default on the first note, thereby extinguishing Martinez's lien on the land.
All defendants-except Sky View, Israely, and Gottlieb-settled with Martinez prior to trial in the following order and for the following amounts totaling $2.3 million:
Date Defendant Settlement Amount April 28, 2013 KTG $175,000.00 March 10, 2014 Fidelity $300,000.00 April 1, 2014 San Jacinto $1,275,000.00 June 13, 2014 WT $550,000.00
On April 29, 2014, trial proceeded against the non-settling defendants-Sky View, Israely, and Gottlieb-for causes of action related to the breach of the note and guaranty agreements, fraud, promissory estoppel, quantum meruit, ratification/adoption, and conspiracy. After an eight-day trial, the jury reached a verdict finding: (1) Israely and Gottlieb authorized Sky View's execution of the note; (2) Israely and Gottlieb ratified Sky View's execution of the note; (3) Sky View failed to comply with the terms of the note; (4) Gottlieb failed to comply with his guaranty agreement; (5) Israely authorized another to execute the guaranty agreement on his behalf and ratified the guaranty agreement; (6) Israely failed to comply with the guaranty agreement; (7) Israely committed fraud on Martinez; and (8) Martinez incurred damages of $2,665,832.72. The jury also awarded Martinez attorneys' fees related to trial, appeals, and any post-judgment efforts to collect the judgment. In summary, the trial court signed a final judgment finding Sky View, Israely, and Gottlieb jointly and severally liable and awarding Martinez $2,665,832.72 in damages and trial attorneys' fees of $574,063.00, as well as $200,000.00 for contingent appellate attorneys' fees to the intermediate court of appeal and the Texas Supreme Court. Sky View and Israely sought settlement credits on the amount awarded by the jury through various post-trial motions, which were denied. This appeal followed.
II. SETTLEMENT CREDIT
By their first issue, Sky View and Israely contend that they are entitled to a settlement credit in this case under the one satisfaction rule.
A. Standard of Review and Applicable Law
We review a trial court's determination of the existence of, the amount of, or its decision to apply a settlement credit for an abuse of discretion. See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc. , 176 S.W.3d 307, 326 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) ; Tex. Capital Sec. Inc. v. Sandefer , 108 S.W.3d 923, 925 (Tex. App.-Texarkana 2003, pet. denied) ; see also Valley Grande Manor v. Paredes , No. 13-11-00752-CV, 2013 WL 3517806, at *1 (Tex. App.-Corpus Christi July 11, 2013, pet. denied) (mem. op.).
Under the one-satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered. Crown Life Ins. Co. v. Casteel , 22 S.W.3d 378, 390 (Tex. 2000) ;
*23 Stewart Title Guar. Co. v. Sterling , 822 S.W.2d 1, 7 (Tex. 1991). This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury. Casteel , 22 S.W.3d at 390. The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted, but rather the injury sustained. See Osborne v. Jauregui, Inc. , 252 S.W.3d 70, 75 (Tex. App.-Austin 2008, pet. denied) ; see also In re DCP Midstream, L.P. , No. 13-14-00502-CV, 2014 WL 5019947, at *8 (Tex. App.-Corpus Christi Oct. 7, 2014, no pet.). The rationale for the one-satisfaction rule is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury. First Title Co. of Waco v. Garrett , 860 S.W.2d 74, 78 (Tex. 1993).
A defendant seeking a settlement credit has the burden to prove its right to such a credit by putting evidence on the record showing, in the settlement agreement or otherwise, the settlement credit amount. Utts v. Short , 81 S.W.3d 822, 828 (Tex. 2002). Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation. Id.
B. Discussion
Sky View and Israely argue that they are entitled to a settlement credit in this case because throughout Martinez's various contract and tort claims he alleged against all seven defendants, Martinez sought recovery for a "single, indivisible injury-nonpayment of the [n]ote." The Texas Supreme Court has held that the indivisible injury recovery theory is significant because "if the settling parties are partially responsible for such an injury, then as a matter of law the judgment should be reduced by the amount of any settlements so as to prevent double recovery by the prevailing plaintiff." Garrett , 860 S.W.2d at 78. It is undisputed that the injury sustained by the jury's finding against Sky View and Israely related solely to the nonpayment of the note. With that said, we disagree with Sky View and Israely's contentions that the various claims asserted by Martinez against all seven defendants sought recovery for a single, indivisible injury.[3] To support this conclusion, we will examine Martinez's causes of action, allegations, and the injuries he claimed against each defendant.
First, with regard to KTG, Martinez asserted causes of action in his fifth amended petition (his last live petition before settling with KTG) for: (1) legal malpractice while acting as Martinez's attorney during the loan transaction; (2) breach of fiduciary duty while acting as the settlement and escrow agent; (3) negligence in acting as the settlement and escrow agent *24 in ensuring that the loan transaction was properly completed; (4) vicarious liability for San Jacinto's actions or omissions; (5) violations of the Texas Deceptive Trade Practices Act in its capacity as settlement agent, escrow agent, and attorney duties separate and apart from its role as Martinez's attorney; and (6) breach of contract as Martinez's settlement and escrow agent. In these allegations, Martinez asserted that KTG "failed to ensure that the transaction was closed properly, that the loan documentation was properly executed by the required individuals, and that the loan proceeds were properly disbursed to the individuals or entities entitled to receive those proceeds." We conclude that these injuries stemmed from duties and obligations owed, as well as acts and omissions related exclusively to the loan transaction process, which would have provided among other things a clear showing of liability against Sky View, Israely and Gottlieb.
Second, with regard to Fidelity, Martinez asserted causes of action in his eighth amended petition (his last live petition before settling with Fidelity) for: (1) breach of contract related to Fidelity denying his claim for recovery under the title policy contract, due to Martinez not having "valid loan documents [...] and thus no valid title"; (2) unfair settlement practices related to his claim; and (3) vicarious liability for San Jacinto's negligent actions in acting as Fidelity's agent. Like the injuries alleged against KTM, Martinez's injuries sustained as a result of Fidelity's alleged conduct related to Fidelity's role in the loan transaction process, specifically as it related to San Jacinto's negligence acting as Fidelity's agent in issuing title insurance policies.
Third, with regard to San Jacinto, Martinez asserted causes of action in his eighth amended petition (his last live petition before settling with San Jacinto) for: (1) negligence related to closing the loan transaction, including improperly documenting the transaction; (2) fraud related to the closing of the loan transaction; and (3) conspiracy to defraud Martinez. We conclude that Martinez's claims against San Jacinto similarly relate to the loan transaction process, including various acts and omissions that were unrelated to Sky View, Israely, and Gottlieb's performance under the contract, nor was San Jacinto a party to the contract between Martinez, Sky View, Israely, and Gottlieb.
Fourth, with regard to WT, Martinez asserted a cause of action in his ninth amended petition (his live petition at trial and last live petition prior to settling with WT) for legal malpractice related to WT's attorney-client representation of Martinez and various acts and omissions that contributed to Martinez's injuries as it related to his assertion of rights and remedies in his direct lawsuit for breach of the note against Sky View, Israely, and Gottlieb, as well as its prosecution of his lawsuit for his claims against San Jacinto and KTG. We conclude that Martinez's injuries related to his cause of action were likewise separate and distinguishable from the injury asserted against Sky View and Israely.
In summary, we hold that the trial court did not abuse its discretion in denying Sky View and Israely's request for a settlement credit. Although Martinez's claims against each of the seven defendants in this case arise out of a common set of underlying facts and sequence of events, as outlined above, the damages for which the jury found Sky View and Israely liable are not part of a "single, indivisible injury," as the appellants contend. Instead, the injury claimed by Martinez against Sky View and Israely are independent of the other injuries Martinez alleged against the settling defendants and related solely and exclusively to Sky View and Israely's obligations *25 to pay what it owed to Martinez under the terms of the note. Therefore, Sky View and Israely are not entitled to a settlement credit. We overrule Sky View and Israely's first issue.
III. ATTORNEYS' FEES
By their second and final issue, Sky View and Israely challenge the factual sufficiency of the award of Martinez's attorneys' fees as excessive.
A. Standard of Review
The determination of reasonable attorney's fees is a question for the trier of fact, and we review such an award based on a sufficiency-of-the-evidence review. See Stewart Title Guar. Co. , 822 S.W.2d at 12. When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986).
Some of the factors that a factfinder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. Arthur Andersen & Co. v. Perry Equip. Corp. , 945 S.W.2d 812, 818 (Tex. 1997). Attorneys' fees, where recoverable by law, must be reasonable under the circumstances of each case and bear some reasonable relationship to the amount in controversy or the amount recovered. Allied Fin. Co. v. Garza , 626 S.W.2d 120, 127 (Tex. App.-Corpus Christi 1981, writ ref'd n.r.e.)
B. Discussion
Ray Thomas, one of Martinez's attorneys, testified regarding the attorneys' fees Martinez incurred as a result of this litigation. Thomas told jurors that WT first represented Martinez from shortly before the inception of the litigation until May of 2013. During WT's representation, Martinez paid WT "almost half a million dollars," of which Martinez sought a reimbursement of $140,000. Thomas then testified that Martinez hired attorney Michael Flanagan, who represented Martinez as lead trial counsel, from May of 2013 until shortly before the trial. According to Thomas, Flanagan worked 125 pre-trial hours on this pre-trial case at a rate of $475 an hour for a total fee of $59,375. Thomas testified that from April 19, 2013 through April 24, 2013, attorneys Thomas and Terry Scarborough, both who bill at $475 an hour, appellate attorney Ricardo Pumarejo, who bills at $300 an hour, and paralegal Lisa Shawn, who bills at $125 an hour assisted Flanagan in preparing for trial on this case. Thomas testified that the efforts of all of these lawyers and paralegal totaled $87,062.50. Furthermore, from the inception of trial until the time he testified, all four lawyers, as well as associate attorney Blayre Pena, who bills at $250 an hour, put in "16 to 20-hour days" for a total figure of $282,625.00 worth of time. Thomas testified that these figures totaled $569,062.00 for the time expended as it *26 related to trial. Thomas next testified about contingent attorneys' fees following the verdict. First, Thomas stated that a reasonable and necessary fee for handling any post-verdict motions in the trial court was $15,000.00. Next, Thomas explained that this case, if appealed, would likely present complex issues on appeal to this Court and a fair and reasonable fee for representation at this stage of the case would total $100,000.00. Thomas then opined that various stages of appeal at the Texas Supreme Court could total up to $100,000.00. Fourth, Thomas explained that if Martinez was successful, the cost of enforcing a judgment in California, where Israely resides, would amount to $50,000 in reasonable and necessary attorneys' fees.
On appeal, Sky View and Israely contend that the amount of Martinez's attorneys' fees are excessive for the $87,062.50 and $282,625.00 fees claimed by Thomas. According to Sky View and Israely, these figures "reflect over-preparation, over-working, and over-trying the case" and should not be borne by Sky View or Israely. In support of this argument, Sky View and Israely cite cases in which the courts of appeals have held that such attorneys' fees awarded were excessive. See Allied Finance Co. v. Garza , 626 S.W.2d 120, 127-28 (Tex. App.-Corpus Christi 1981, writ ref'd n.r.e.) (finding attorney's fees of excessive due to attorneys overpreparing, overtrying, and overbriefing one aspect of the case); Argonaut Ins. Co. v. ABC Steel Prods. Co., Inc. , 582 S.W.2d 883, 889 (Tex. App.-Texarkana 1979, writ ref'd n.r.e.) (finding attorney's fees excessive due to overworking of the case); see also Thomas v. Bobby D. Assocs. , No. 12-08-00007-CV, 2008 WL 3020339, at *5 (Tex. App.-Tyler 2008, no pet.) (finding repeated work by seven successive attorneys to be excessive).
This case involved a complex commercial issue with parties from different states and countries that spanned four years of litigation and eight days of trial. Thomas testified that the high number of hours for trial were necessary to prepare for this type of case. Furthermore, Thomas's uncontroverted testimony outlined his and the other attorneys' qualifications, including Thomas's more than twenty-five years of experience as an attorney and his board certification in civil trial law. Additionally, the record reveals that Martinez's attorneys were able to obtain a verdict for the full amount of the principal and interest owed by Sky View and Israely totaling $2,665,832.72, after the initial default.
When considering and weighing all the evidence against the Arthur Andersen factors, we find the cases that Sky View and Israely rely on to support their excessiveness argument distinguishable, and hold that the evidence was factually sufficient to support the amount of attorneys fees' complained about on appeal. Sky View and Israely's second issue is overruled.
IV. CONCLUSION
We affirm the trial court's judgment.

Hugo Martinez is not related to appellee Roman Martinez Mendez.

Both parties invite this Court to engage in an analysis of a Fifth Circuit opinion, GE Capital Commercial, Inc. v. Worthington National Bank , which involves that court's Erie guess regarding the application of the one satisfaction rule. See 754 F.3d 297, 304-13 (5th Cir. 2014). The Worthington case dealt with whether the Texas Uniform Fraudulent Transfer Act mandated a settlement credit in a judgment where a settling defendant settled with the plaintiff prior to a jury verdict against the non-settling defendant. We believe that the cited decisions out of the Texas appellate courts are sufficiently instructive in this case, and decline the parties' invitations to analyze the Worthington case.