**MODERN EXPLORATION,
INC., Appellant,**

v.

**Paul Joseph MADDISON, et
al., Appellees.**

**No. 13–85–092–CV.**

Court of Appeals of Texas,
Corpus Christi.

April 24, 1986.

Cynthia L. Stagner, Nall, Stagner & Pelley, Sherman, for appellant.

John M. Zukowski, Mark J. Tempest, Campbell, Athey & Zukowski, Houston, for appellees.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Modern Exploration, Inc. and Modern Drilling, Inc., ("Modern") appeal the ruling below terminating part of their oil and gas lease from Paul and Melba Maddison. Modern raises issues involving the sufficiency of the evidence, the construction of the lease, the submission of special issues on damages, and the admissibility of testimony about attorney's fees from an expert witness not listed in response to a discovery question. We reverse and render the judgment in part, modify it in part, and as modified, affirm the remaining portion of the trial court judgment.

Paul Maddison and his wife Melba own a 200-acre tract of land in Gonzales County, Texas. Mr. Maddison contacted Gary Yost to discuss leasing the oil and gas interests to Yost. Yost, who did business as Modern Exploration, Inc., and Modern Drilling, Inc., met with Maddison and Maddison's attorney in September, 1980. After hours of negotiations, the two men drew up a rough draft of the lease. The parties also signed a two-page memorandum, intended only as a summary of the parties' actual agreement, to enable Yost to acquire financial backing for exploratory drilling on the land. The actual, final lease was thirteen pages long and was apparently signed several weeks later.[1] It contemplated the drilling of more than one (disputed) well on the 200-acre Maddison tract.

Modern drilled the first well on time, and it proved successful. Under the terms of the lease, Modern had 270 days from "the completion of drilling on the first well" to begin drilling a second well, or the lease would terminate as to the acreage not drilled upon. Modern reported to the Railroad Commission that it completed drilling the first well on 1–24–81. Shortly after the first well began producing oil, Mr. Maddison's attorneys notified Modern that they would calculate the 270-day period from 1–24–81.

Modern had not begun drilling the second well 270 days after 1–24–81. On 10–26–81, Maddison claimed the lease had terminated on all but the acreage surrounding the producing well and ordered Modern off the remaining acres. Modern then sued for a declaratory judgment that the lease remained fully in effect. Modern claimed that it did not actually complete drilling the first well until 2–7–81, explaining that the 1–24–81 date was merely the date when the deepest well depth was reached. Modern had then plugged the hole with cement, and drilled through the cement plug on 2–7–81. Using 2–7–81 as the date when it completed drilling the well, Modern claimed it had until 11–4–81 to begin drilling the second well. Thus, Modern argued at trial, Maddison had wrongfully prevented Modern from timely drilling the second well.

The jury returned a verdict generally favorable to the Maddisons, and the trial court entered judgment that the lease had terminated on all but the eighty acres surrounding the first well.

Modern's first two points of error allege that the parties made a mutual mistake (or that Maddison acted fraudulently) by including the term "completion of drilling on the well" in the lease as the 270-day triggering date; Modern contends that the parties actually agreed that the triggering date would be that of the "completion of the well." Since there was no real dispute that the well was *completed* on 2–11–81 (the date production actually began), Modern argues that Maddison wrongfully prevented Modern from drilling the second well since 270 days from 2–11–81 had not elapsed as of 10–26–81, the date Maddison ordered Modern off the undeveloped acreage.

---

1. The lease was also amended once, involving matters not relevant to this appeal.

Modern's first point of error alleges that the trial court erred in overruling its motion for judgment n.o.v. because the evidence was legally insufficient to support the jury's finding that the parties agreed to "completion of drilling" rather than "completion of the well." Modern's second point of error alleges that the court erred in overruling its motion for new trial because the evidence was factually insufficient to support the same finding.

Special Issue No. 1 inquired:

Do you find from a preponderance of the evidence that at the time the lease was executed Modern and the defendants acting by and through Paul Maddison, Sr. had agreed that the second well was to be drilled within 270 days following completion of the first well or that the second well was to be commenced within 270 days following completion of drilling of the first well?

Answer: Completion of the first well or completion of drilling of the first well.

The jury answered, "Completion of drilling of the first well."

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L. Rev. 361 (1960).

The evidence at trial in support of the jury's finding meets both the factual and legal sufficiency tests. The oil and gas lease contains the term "completion of drilling," and Maddison testified that the true agreement of the parties was "completion of drilling" all along:

Q. (By opposing counsel) It is your testimony now that the true agreement was that you had completion of drilling in your mind all the time; is that correct?

A. That is a positive fact.

Maddison's son, who had a one-fourth interest in the total royalty paid under the lease, testified that, when he signed the lease, he understood that Modern was to commence drilling on the second well within 270 days after the completion of drilling on the first well. He stressed that he was aware of the differences between "completion of drilling" and "completion."

Modern's evidence directly conflicted with the Maddisons' testimony that the lease correctly reflected the parties' intent that "completion of drilling" was to be the triggering language. Yost (same as Modern) testified that the parties intended "completion of the well" all along, and Modern introduced into evidence the notes taken by Maddison's attorney during the preliminary negotiations and the two-page memorandum the attorney prepared after these negotiations were over.

Yost was to use the memo to acquire funding to commence drilling on the first well. Although the fourth paragraph of the memorandum of September 23, 1980, provides that the second well "shall be spudded within nine months of the completion of the first well" (not "completion of drilling"), the last paragraph provides:

This is not intended to be a complete synopsis of the lease nor is it intended to set out all the terms of the lease. It is intended to reflect that the parties have agreed upon a form of oil and gas lease which will be signed as soon as it is presented to the parties.

Moreover, Maddison's attorney, who was present during the long negotiation session between Maddison and Yost, testified that he thought the parties had negotiated over the terminology at issue, but that he attached "no artistic meaning" to the difference between the terms at that time.

■ The jury was free to find that the memo was not an accurate reflection of the parties' agreement. Additionally, the jury issue inquired into the intent of the parties *at the time the lease was executed.* Even if the memo and the rough draft of the lease conclusively established that the parties once intended to use "completion of the

well" in the lease, the parties were free to change their minds prior to their actually signing the lease.

■ A good deal of confusion appears in the record concerning the two terms "completion of the well" and "completion of drilling." They are often used interchangeably. It was within the province of the jury to decide what the parties' true agreement was, i.e., whether "completion of drilling" was mistakenly or fraudulently included in the lease. Instead, the jury found that the oil and gas lease accurately reflected the parties' intent. We find both legally and factually sufficient evidence to uphold that finding. We accordingly overrule Modern's first and second points of error.

■ By its third point of error, Modern contends that the trial court erred in not finding that the term "completion of drilling" was ambiguous and then construing it in a manner to prevent the partial cancellation of the lease. Modern has waived this argument, however. Generally, one seeking to establish ambiguity under a written contract must specifically plead such ambiguity and set out the portion claimed to be ambiguous. *See generally Entzminger v. Provident Life & Accident Insurance Co.*, 652 S.W.2d 533, 535 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Crozier v. Horne Children Maintenance and Educational Trust*, 597 S.W.2d 418, 421 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.); *Skyline Furniture, Inc. v. Gifford*, 433 S.W.2d 950, 954 (Tex.Civ. App.—El Paso 1968, no writ). Modern admits in its brief that it did not plead that any ambiguity existed. Even absent waiver, we find the lease term at issue susceptible of only one reasonable meaning and therefore unambiguous. "Completion of drilling" logically imports the time when no further drilling is needed, when oil or gas has been reached and the well is capable of producing—in short, when the well's total depth is reached, not when the operator chooses to perforate the cement plug that he chose to insert into the well. This was

the interpretation the trial court adopted. We overrule Modern's third point of error.

Modern's fourth and fifth points of error involve Special Issue No. 2:

Do you find from a preponderance of the evidence that the defendants notified Modern to cease operations before the 270-day period had expired following completion of drilling on the first well?

Answer: "Yes" or "No"

The jury answered, "No."

■ Modern's fourth point contends that this formulation did not submit a controlling issue of fact, as required by TEX.R. CIV.P. 279. Its fifth point is essentially just the other side of the coin, that the special issue submitted a question of law not proper for the trier of fact. Modern argues that Special Issue No. 2 asked the jury to decide the proper interpretation of the term "completion of drilling" since it required the jury to determine the date on which the 270-day period began to run. We disagree. The issue of ambiguity was not pled and was therefore not a proper issue in the case. The trial court had correctly concluded that the term was unambiguous, and that "completion of drilling" was when total depth was reached on 1–24–81. Whether 270 days had expired from 1–24–81 until Maddison ordered Modern off the land was an important factual issue. Had Maddison forced Modern off the land before 270 days from the date of completion of drilling on the first well, Maddison would have wrongfully prevented Modern from keeping the lease fully in effect. The special issue essentially asked the jury to determine whether Maddison ordered Modern off the land prematurely, certainly a controlling issue of fact. We overrule Modern's fourth and fifth points of error.

Modern's sixth and seventh points involve Maddison's counterclaim for damages due to Modern's failure to release the acreage upon which the lease had terminated. The jury found that Maddison had been injured $30,000.00 because of Modern's failure to timely release the acreage.

■ When Modern failed to execute a release of the minerals for which the lease had terminated, a cloud on the title to the minerals was created:

> Any deed, contract, judgment or other instrument not void on its face which purports to convey any interest in or makes any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner.

*Best Investment Co. v. Parkhill,* 429 S.W.2d 531, 534 (Tex.Civ.App.—Corpus Christi 1968, writ dism'd). However, a suit to remove a cloud from title is a suit for a specific, equitable remedy, and money damages are not recoverable. *See Ellis v. Waldrop,* 656 S.W.2d 902, 905 (Tex.1983). Therefore, unless Maddison can prove another theory of recovery, his award of damages must be reversed.

■ Damages may be recovered in a tort action for slander of title. It is undisputed, however, that Maddison did not prove slander of title; he did not prove the loss of a subsequent specific sale of the mineral interest, a necessary element of a slander of title recovery. *See A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145 (Tex.1982).

■ Maddison argues that by its terms the lease imposed a contractual duty on Modern to release the undeveloped acreage and, therefore, damages normally awarded for breach of contract (foreseeable consequential damages) should be recoverable. Contrary to his assertions, however, the lease did not create such an express duty until *all* the acreage governed by the lease had expired. While Modern may well have owed Maddison a common-law duty to release the acreage on which the lease had expired, see *Hunt Oil Co. v. Dishman,* 352 S.W.2d 760, 764 (Tex.App.—Beaumont 1961, writ ref'd n.r.e.) and *Kidd v. Hoggett,* 331 S.W.2d 515, 517 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.), we are unwilling to hold that either a contractual or common-law duty to release acreage under a terminated mineral lease, by itself, creates an action for damages absent proof of the loss of a specific sale. We sustain

Modern's sixth and seventh points of error and reverse the trial court's award of damages for Maddison's counterclaim.

Modern's eighth and ninth points of error involve the testimony of two of Maddison's attorneys concerning the reasonableness and necessity of their fees. Modern submitted a pre-trial interrogatory, in accordance with TEX.R.CIV.P. 166b, which requested Maddison's trial attorney to identify all experts he expected to call at trial. This attorney did not name himself nor any other attorney in his answer, nor did he later supplement his response. Therefore, Modern argues, under Rule 215(5), the trial court was required to exclude the testimony of Maddison's attorneys concerning their fees; without their testimony, no evidence of Maddison's attorney's fees existed, and the jury's award of $40,000.00 in attorney's fees, plus fees for appeal, was improper.

■ Several Texas courts have held or implied that Rules 166b and 215(5) and their predecessor, former Rule 168, apply to attorneys who wish to provide expert testimony on their fees. *See GATX Tank Erection Corp. v. Tesoro Petroleum Corp.,* 693 S.W.2d 617 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Doyle v. Members Mutual Insurance Co.,* 679 S.W.2d 774 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). *See also* Kilgarlin, *What To Do With the Unidentified Expert?,* 48 Tex.B.J. 1192 (1985). Under Rule 215(5), the testimony of unidentified expert witnesses must be excluded "unless the trial court finds that good cause sufficient to require admission exists." *Cf. H.E.B., Inc. v. Morrow,* 704 S.W.2d 93 (Tex.App.—Corpus Christi 1985, writ pending).

Modern cites *GATX,* 693 S.W.2d 617, where the plaintiff's attorney failed to list himself as an expert in response to an appropriate interrogatory. The trial court nonetheless admitted his testimony concerning attorney's fees despite defense objections. The San Antonio Court of Appeals reversed, holding that the trial court

erred in not excluding the testimony. The Court found that the plaintiff "did not offer any evidence of good cause sufficient to require the admission of the testimony." *GATX*, 693 S.W.2d at 620. Modern contends that Maddison likewise did not show good cause for the admission of testimony on attorney's fees.

In *Doyle*, 679 S.W.2d 774, the Fort Worth Court of Appeals was faced with an analogous situation. The Court applied an "abuse of discretion" standard to review the trial court's decision to permit the attorney's testimony. The Court concluded that the trial court had not abused its discretion, noting that the insurance company in *Doyle* could not have been surprised or harmed by the attorney's testimony about his fees; the petition prayed for the recovery of attorney's fees, and the insurance company knew that the plaintiff's attorney had provided a considerable amount of work for his client.

In *Garza*, 626 S.W.2d 120, this Court held that the trial court did not abuse its discretion by admitting an attorney's testimony about his fees, even though the attorney did not supplement his answer to an appropriate interrogatory until just three days before trial. We noted that the insurance company was notified before trial that the plaintiff's attorney would testify about his fees but took no steps to take his deposition, and that the basis of his testimony and the pleadings were available to the insurance company before he testified.

■ Unlike the *GATX* Court, we find sufficient evidence to support the trial court's implicit finding that good cause existed to permit Maddison's attorneys to testify about their fees. Some of the relevant factors mentioned in *Doyle* and *Garza* also existed in the case at bar. At a conference outside of the jury's presence, Maddison's trial attorney informed the trial court that

he did not list attorneys as experts in response to the interrogatory because it was his experience that the custom and practice in Texas was against doing so. He also pointed out that Modern's allegation of "surprise" was unfounded since Maddison's counterclaim contained a demand for attorney's fees of $75,000.00, and he had informed Modern's counsel earlier that day that he would be testifying about his fees. Counsel for Modern cross-examined Maddison's attorneys regarding their fees but did not request a recess or a continuance. We hold that the trial court did not abuse its discretion by permitting the evidence of attorney's fees.[2] We overrule Modern's eighth and ninth points of error.

The trial court's judgment not only declared that the mineral lease had terminated for the 120 undeveloped acres but that it had also terminated for minerals under the 80-acre well which were deeper than 150 feet below 7,655 feet, the depth of that well. Modern's tenth and final point of error avers that the trial court erred in so holding since there was no finding by the jury upon which the trial court could base this decision.

The lease provides:

28. At the end of the primary term, this lease shall terminate as to all minerals which are below one hundred fifty feet (150') below the deepest hole drilled, whether production may be had at shallower depths or not....

29. If the drilling logs from wells drilled on this property show production at a depth or in a geophysical formation which is not utilized by Lessee in its operations, upon written demand by Lessors, Lessee shall have two (2) years from the date of such notice to either develop and produce that depth or forma-

---

2. Caution would suggest that trial counsel wishing to recover fees for legal services rendered should include their own names, and the names of any other attorneys who may testify about attorney's fees, in their answers to interrogatories seeking the identities of expert witnesses. When an attorney has failed to do so, and an

objection is voiced at trial, the trial judge should clearly set out in the record the factors which the judge has determined to constitute good cause, should the judge decide to admit the testimony. *See* Kilgarlin, 48 Tex.B.J. 1192, 1200.

tion or release all its rights to that depth or fromation [sic] under this lease.

We initially note that Paragraph 28 could provide no basis for the trial court's decision; by express terms in the lease, the primary term never lapsed since production on the eighty acres never ceased.

 We also find that Paragraph 29 provided no basis for the trial court's decision to terminate the lease for the minerals 150 feet below the deepest drilling. Although Maddison did introduce evidence that he gave written demand to Yost and Modern to drill at deeper levels more than two years prior to judgment, under TEX.R. CIV.P. 279, the one who has the burden of proof on a ground of recovery or defense has the duty to submit all essential elements of his cause of action to the jury. *See generally Akin v. Dahl,* 661 S.W.2d 911 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *Cameron County v. Velasquez,* 668 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Maddison had the duty to request that the trial court submit special issues to the jury to establish his counter-claim for termination of the lease as to all minerals not in the producing horizon; Maddison failed to secure fact findings necessary for relief under the provisions of Paragraph 29. Without such special issues, Maddison could not obtain a termination of any mineral rights below the producing horizon.

Maddison points out that when facts are established as a matter of law, special issues concerning them need not be submitted to the jury. *See Akin,* 661 S.W.2d at 913. The drilling logs in evidence, however, do not *conclusively establish* "production," or the existence of oil and gas at a depth not utilized by Modern.

Citing TEX.R.CIV.P. 279, Maddison also contends that this Court should *deem* the necessary jury findings, based on the jury's answers to other special issues. None of the jury's answers form a basis for so doing since they do not involve similar issues; they are not "necessarily referable" to the ground of recovery here sought by Maddison. In the absence of a finding of fact by the jury, we are unable to hold that Paragraph 29 of the lease was satisfied. We sustain Modern's tenth point of error.

The trial court's judgment is RE-VERSED and RENDERED to delete the $30,000.00 damages award and MODIFIED as to the depth limitation of production from the eighty-acre tract. In all other respects, it is AFFIRMED.