**CITY OF BROWNSVILLE and Ernesto Avalos, Appellants,**

v.

**Alfonso PENA, Appellee.**

No. 13–85–439–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

John E. Chosy and William L. Morrow, Carinhas & Morrow, Juan Jose Martinez, Brownsville, for appellants.

Noe Robles, Harlingen, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Appellee brought suit against appellants under TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 1986) for libel, and under TEX. REV. CIV. STAT. ANN. art. 6252–16a (Vernon Supp.1986), "the Whistleblower Act." The jury found against appellants and awarded appellee damages under both causes of action. Appellee recovered $15,000.00 from the city as damages for the article 6252–16a violation, plus $5,000.00 in exemplary damages. Appellee recovered $10,000.00 as damages for the libel and $20,000.00 in exemplary damages. Further, appellee recovered attorney's fees

pursuant to article 6252–16a. The city brings twelve points of error and Avalos raises one point of error on appeal. We affirm the judgment of the trial court.

Pena began working for the Brownsville Urban System (BUS) in 1978 as a bus driver. In May of 1983, Pena was promoted to a dispatcher. On August 11, 1984, Pena and Eduardo Gomez, a driver for BUS, reported to the city manager's office that Avalos, Director of BUS, and Nick Montano, Operations Manager for BUS, entered the bus compound in an intoxicated state, accompanied by two women, to fill up Avalos' car with gas. The car was issued to him by the city. Pena gathered statements from witnesses to the incident, and on August 20, 1984, Pena delivered those statements to the city manager. Pena contacted Gary Thornburg of the Cameron County Good Government League on August 28, 1984. The Good Government League is a political watchdog that investigates allegations of misuse of public funds. Dissatisfied with the results from the city manager's office, Pena released a statement to the news media on September 6. The statement to the news media not only included the August 11 incident involving Avalos and Montano, but included reports of the use of BUS employees to service the mayor's car during business hours and the pilfering of public funds by selling city property.

On September 10, Montano, Avalos' right-hand man, organized a meeting of the bus drivers willing to make a statement against Pena. The majority of the bus drivers at that meeting were legal residents, but not U.S. citizens. The gist of those statements collected by Montano was that Pena was a racist and continuously discriminated against legal residents from Mexico. Avalos was present at the meeting. Many of the legal residents were not fluent in English, and therefore their statements had to be translated. Although the statements purport to be translated by George Gonzales, a personnel clerk at BUS, Mr. Gonzales was unable to translate at trial. Gonzales testified that he had help from his family in translating the statements. Mrs. Sanchez, Avalos' secretary, testified that she witnessed Avalos preparing the translations the morning of September 11.

Upon arriving at work on September 11, Avalos informed Pena that he was suspended without pay for three days. Avalos cited insubordination as the reason for the suspension. The purported insubordination occurred a few days prior when Pena refused to park his car in the bus compound, as required of all bus employees. Pena's car was legally parked on the street in front of the bus compound and Pena was not instructed to move his car until 20 minutes prior to the end of his shift. Upon returning to work on September 14, following the three-day suspension, Avalos informed Pena that he was being demoted from his dispatcher position to the position of bus driver. Avalos cited discrimination against fellow workers and the inability to comply with supervisor's orders as the reason for the demotion.

On September 12, 1984, the Brownsville Herald reported Pena's suspension.[1] This article includes a statement by Avalos that:

> I have a total of eighteen statements from resident aliens.... The general concensus is that Pena is an agitator, a person with racist attitudes against Mexicans legally residing in the United States. The sworn statements also state that Pena has threatened to fire them as soon as he takes over....

On September 14, Pena gave copies of all the statements in his possession to the city personnel director, the city manager, and the district attorney.

The city, by its first point of error, complains that the trial court erred in submitting special issue number two because it was "overly broad and included no limiting instruction." Special issue number two inquired, "Did Avalos discriminate against Pena in retaliation for reporting the violation?"

---

1. This story was a follow-up to the original story involving Pena's allegations of corruption.

Section 2 of article 6252–16a is entitled "Retaliation prohibited" and states:

A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

The word "discriminate" is not defined in this article. When statutory violations are the basis of the special issues, issues should be submitted in terms as close as possible to those actually used in the statute. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931, 937 (Tex. 1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *see* TEX. R. CIV. P. 277. The submitted issue closely follows the wording of the statute. Therefore, the broad form submitted in the instant case was proper. We overrule the city's first point of error.

The city, in its second point of error, complains that the trial court erred in entering judgment against the city based upon the jury's findings in special issues three, seven, and thirteen because there was no evidence or, in the alternative, insufficient evidence to support the findings. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Special issue number three inquires: "In discriminating against Pena was Avalos engaged in the service of the City and in furtherance of the City's business?" Avalos, as director of BUS, was responsible for hiring and firing employees, as well as promotions and demotions. The city manager also testified that it was Avalos' duty to implement and enforce policy involving discrimination at BUS. It is inconceivable that Avalos' disciplinary action of suspending and demoting Pena was not within his scope of employment as director of BUS.[2] The city does not complain of the sufficiency of the evidence to support the jury's finding to special issue number two, that Avalos discriminated against Pena for reporting the violation. There is sufficient evidence that Avalos was engaged in the city's service and in furtherance of city business when the discrimination occurred.

Special issue number seven inquires: "In so acting with malice was Avalos engaged in the service of the City and in furtherance of the business of the City?" Again, the city does not complain of the sufficiency of the evidence to support the jury's finding to special issue number six, that Avalos acted with malice in discriminating against Pena. Therefore, the evidence which supports the jury's finding to special issue three also supports the jury's finding to this issue.

Special issue number thirteen inquires: "In publishing such defamatory statement was Avalos engaged in the service of the City and in furtherance of the City's business?" We will discuss this question in conjunction with the city's points of error involving the city's liability for the alleged libelous statement.

The city, by its tenth point of error, argues that the city is immune from liability due to sovereign immunity. However, governmental immunity is a defensive doctrine and the city has the burden of proving and submitting the defense. *City of Houston v. Bush*, 566 S.W.2d 33, 35 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.); *see* TEX. R. CIV. P. 94. The city did not plead, submit issues upon, or raise in its motion for judgment notwithstanding the verdict the governmental immunity de-

---

2. Pena appealed the suspension to the city manager. Although the city manager revoked the suspension and reinstated back pay, a letter of reprimand concerning the incident remained in Pena's personnel file.

fense. *Cf. City of Dallas v. Moreau,* 718 S.W.2d 776 (Tex.App.—Corpus Christi, 1986, no writ). The predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, plea in abatement, or some other vehicle. *O'Shea v. Coronado Transmission Co.,* 656 S.W.2d 557, 564 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The city cannot now complain that the trial court erred when the city failed to present its defense at trial. We overrule the city's tenth point of error.

Absent the governmental immunity defense, Pena must prove that Avalos' defamatory statement was referable to the duty Avalos owed to the city, and was made while in the discharge of that duty. *Wagner v. Caprock Beef Packers Co.,* 540 S.W.2d 303, 304 (Tex.1976); *Smith v. M System Food Stores, Inc.,* 156 Tex. 484, 297 S.W.2d 112, 114 (1957). The jury returned a finding favorable to Pena in special issue number thirteen. Avalos testified that, "All of the decisions pertaining to the BUS system were made at the time I was director by myself." When asked if any decisions had to be communicated to the city manager before he made them, Avalos responded, "There was only one thing and this was only if it was critical to news releases to the media." Avalos testified that his allegation that Pena was a racist was made to the media to reassure the public, specifically the political watchdogs, that there was no corruption at BUS. As concerns the media, Avalos testified that he was instructed not to submit written releases, but that he could "talk" to the media about problems.

■ Mr. Lieck, the city manager, admitted that the city's personnel manual did not prohibit the director of BUS from making comments to the media, but that he had advised Avalos to contact him before speaking with the media. Lieck further testified that he could not recall whether or not he authorized Avalos' statements to the media. Avalos' statements to the media were in regard to the operations of BUS and as director of BUS, solely responsible for operations, these statements were in discharge of the duty he owed the city. There is sufficient evidence to support the jury's finding to special issue number thirteen. We overrule the city's second point of error.

■ The city, by its third point of error, complains that the awards of damages for both libel and violations of the "Whistleblower Act" constitute "a recovery of damages twice for the same injury." The city, in its fourth point of error, complains that the damages found in special issues five, eleven and twelve are excessive.

The city relies on *International-Great Northern Railroad Co. v. King,* 41 S.W.2d 234, 236 (Tex.Comm'n.App.1931, holding approved) which states, "The rule is well recognized in this state that it is improper to authorize a jury to assess double damages for the same loss or injury, and an issue or instruction is erroneous if it authorizes or permits a double recovery." The city's argument is flawed in that Pena's cause of action under the "Whistleblower Act" for being suspended and demoted, and his cause of action for the libelous "racist" comment, are not suits for the same injury. Pena has brought suit for two distinct injurious acts. We overrule the city's third point of error.

Under special issue number five, the jury found that $15,000.00 would compensate Pena for the mental anguish suffered by the retaliatory discrimination. The jury, in response to special issue number twelve, found that Pena suffered $10,000.00 as injury from the publication of the defamatory statement.[3]

■ The record indicates that Pena, subsequent to the injurious acts, went to the hospital three times, which appeared to be stress-related. The record also indicates

---

3. The city also complains of special issue number eleven as excessive. However, this issue merely inquires whether or not Pena suffered any injury due to the defamatory statement and does not involve damages.

that Pena suffered depression as a result of the retaliatory actions of his supervisor, Avalos. The general rule is that a jury may imply mental anguish from illness or injuries accompanied by physical pain. *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *see also First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 702 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.) (the law presumes the existence of actual damages in cases involving libel per se). Therefore, there is evidence to support a finding of mental anguish. In determining whether an award is excessive, all the elements of damages the jury could have properly considered from the evidence must be examined. A letter of reprimand remains in Pena's personnel file and, although his suspension was revoked, this did not occur until two months after the suspension. Further, Pena remained in his demoted position of bus driver until the city fired Avalos. In light of the evidence of the deteriorating working conditions and physical injury, the $15,000.00 jury award is supported by sufficient evidence and is a reasonable amount. *Pope v. Moore*, 29 Tex.Sup.Ct.J. 412, 413, 711 S.W.2d 622 (1986); *cf. Ford Motor Co. v. Durrill*, 714 S.W.2d 329 (Tex.App.—Corpus Christi, no writ).

In conjunction with the city's complaint of excessive damages for the defamation, we will consider the city's eighth point of error which complains that the trial court erred in entering judgment against the city because there was no evidence or, in the alternative, insufficient evidence that the statement was false. This is also Avalos' sole point of error. Both claim the statement was true.

A statement is libelous per se if the written words are so obviously hurtful to the person aggrieved by them that they require no proof of their injurious character to make them actionable. *Rawlins v. McKee*, 327 S.W.2d 633, 635 (Tex.Civ.App.—Texarkana 1959, writ ref'd n.r.e.). The words of Avalos were libelous per se and

the law presumes actual damages. *Cf. Bayoud v. Sigler*, 555 S.W.2d 913, 915 (Tex.Civ.App.—Dallas 1977, writ dism'd).

Truth of the statements complained of is a complete defense to libel. *Gulf Construction Co. v. Mott*, 442 S.W.2d 778, 784 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). However, a person cannot instigate the defamatory remarks by creating rumors and then claim the truth as a defense. *See Gulf Construction Co.*, 442 S.W.2d at 784. Approximately ten of those persons Avalos gathered statements from testified at trial. These statements were the basis for Avalos' statement to the media. While Avalos attempted to prove that Pena constantly used the word mojado (wetback), purported basis of the racism, the evidence indicates that Avalos and his right hand men initiated these rumors and then organized the legal residents to complain. The concensus among the legal residents that testified was that they never saw Pena discriminate against legal residents. Further, although Pena used the word mojado, it was in jest and the legal residents were privy to its connotation.

The amount of damages in this type of case is peculiarly within the province of the jury and, in light of the facts outlined, the jury's award is not unreasonable. *Cf. Bayoud*, 555 S.W.2d at 916. We overrule the city's fourth and eighth points of error, and Avalos' sole point of error.

The city, in points of error five and six, complains of the admission of expert testimony regarding attorney's fees and the award of attorney's fees.

The city objected to the expert testimony regarding attorney's fees for failure to supplement the city's interrogatories. TEX. R. CIV. P. 166b(5)(b) requires a party to supplement "in no event less than thirty (30) days prior to the beginning of trial except on leave of court." Pena attempted to supplement the day of trial. Further, TEX. R. CIV. P. 215(5) provides:

A party who fails to supplement seasonably his response to a request for

discovery in accordance with paragraph 5 of Rule 166b shall not be entitled to present evidence which the party was under a duty to provide in a supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter when the information required by Rule 166b concerning the witness has not been disclosed, unless the trial court finds that good cause sufficient to require admission exists.

When the city objected to the testimony for failure to supplement, it was incumbent upon the party offering the testimony to show good cause why it should be included. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986); *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.,* 693 S.W.2d 617, 620 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Although the trial court found the city would not be "prejudiced," the Supreme Court in *Morrow* held that lack of surprise "is the inverse of the standard." 714 S.W.2d at 298. However, since Pena did supplement two days prior to the day of the expert testimony and the court found no prejudice as all parties were familiar with attorney's fees in Cameron County, the trial court did not abuse its discretion in implicitly finding that good cause existed. *Modern Exploration, Inc. v. Maddison,* 708 S.W.2d 872, 878 (Tex. App.—Corpus Christi 1986, no writ); *E.F. Hutton & Co. v. Youngblood,* 708 S.W.2d 865, 872 (Tex.App.—Corpus Christi 1986, writ requested). We overrule the city's fifth point of error. The city's sixth point of error contends that if the experts' testimony is excluded, there will no longer be sufficient evidence to support the jury's finding. We overrule the city's sixth point of error.

■ The city, by its seventh point of error, complains that the trial court erred in submitting to the jury, and entering judgment based upon, special issue number ten because it was overly broad and included no limiting instruction. Special issue number ten inquired:

Do you find from clear and convincing evidence that Avalos published with malice a defamatory statement concerning Pena?

Publish means to communicate the defamatory statement to at least one third person capable of understanding the defamatory content of the statement.

A defamatory statement is one tending to injure the reputation of a living person and thereby expose him to public hatred, contempt, ridicule or financial injury or to impeach the honesty, integrity, or reputation of such person. The defamatory statement must be false and communicated by one who does not in good faith honestly believe it to be true.

The city complains that a specific defamatory statement should have been included in the question to prevent the jury from considering "other statements in evidence that were not defamatory under the law but which could have been the basis for the jury's finding that a defamatory statement was published by Avalos."

The trial court's definition substantially tracks TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 1986) and is correct. The trial court properly submitted explanatory instructions and definitions and therefore, it is not subject to an objection of being "overly broad." *See* TEX. R. CIV. P. 277. We overrule the city's seventh point of error.

■ The city, by its eleventh and twelfth points of error, complains that the trial court erred in awarding exemplary damages against the city. Section 4(a)(2) of the "Whistleblower Act" allows for the recovery of exemplary damages. The jury found the defamatory statements were made with malice, and that Avalos was within the scope of his employment. Therefore, exemplary damages are recoverable. *See British Overseas Airways Corp. v. Tours & Travel of Houston, Inc.,* 568 S.W.2d 888, 894 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). We overrule the city's eleventh point of error. The

city's twelfth point of error is conditioned upon this Court's holding that the city is not liable for actual damages under defamation. We overrule the city's twelfth point of error.

The city withdrew its ninth point of error upon submission. The judgment of the trial court is AFFIRMED.