**Jimmy HOLMAN, Randee Fagan, and Allen Ranch, A Partnership, Appellants,**

v.

**MERIDIAN OIL, INC., Appellee.**

No. 04–98–00495–CV.

Court of Appeals of Texas, San Antonio.

Feb. 10, 1999.

Rehearing Overruled April 9, 1999.

David W. Wallace, Wallace Law Offices, Sonora, for Appellant.

John A. "Jad" Davis, Turner & Davis, P.C., James J. Behrmann, Midland, for Appellee.

Before ALMA L. LÓPEZ, Justice, and CATHERINE STONE, Justice and PAUL W. GREEN, Justice.

ALMA L. LÓPEZ, Justice.

This is an appeal from the trial court's granting of summary judgment in favor of the appellee, Meridian Oil, Inc. ("Meridian"). Appellants raise three issues on appeal. In their first issue, appellants contend the trial court erred in granting Meridian's motion for summary judgment because it failed to consider the implied obligation to release under the oil and gas lease, and Meridian failed to prove, as a matter of law, that it did not withhold timely release of six oil and gas leases. In their last issue, appellants assert the trial court erred in denying their motion for summary judgment. We overrule appellants's issues and affirm the judgment of the trial court.

## Statement of Facts

Appellants, Jimmy Holman, Randee Fagan and Annette Allen (authorized partner of Allen Ranch), each executed separate oil leases with Meridian on December 15, 1989. A total of 6,799.70 acres located in Edwards County, Texas were encompassed in the leases. The leases were properly recorded in the public records of Edwards County. Each lease contained a primary term of five years. In their motion for summary judgment, appellants admitted that no production was secured on the leases. The parties do not dispute that wells were not drilled, and no activity was undertaken by Meridian which may have extended the leases beyond December 15, 1994 at midnight.

On December 16, 1994, the primary term of the leases had expired. In April of 1995, Holman, Fagan and Allen submitted a demand letter to Don Davis of Meridian, requesting formal releases of the leases to be filed of record. Damages pursuant to the liquidated damages clause were also demand-

ed. Meridian complied with the appellants's request and executed releases on June 20, 1995. The releases, however, were not filed in the public records of Edwards County until July 5, 1995, six months after the expiration of the leases. At trial, appellants asserted a claim for $40,798.20 in liquidated damages plus reasonable attorney's fees and costs for Meridian's six-month delay in executing the releases.

## Standard and Scope of Review

On review of a summary judgment, we recognize the movant has the burden of showing that no genuine issue of material fact existed and that he was entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Where both parties move for summary judgment and one is granted and the other denied, we review the summary judgment evidence presented by both sides and determine all questions presented and render a judgment as the trial court should have rendered. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 80 (Tex.1997). Issues not expressly presented to the trial court by written motion or response will not be considered on appeal as grounds for reversal. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 674–75 (Tex.1979).

## Duty to Release

Although not codified in statutory law, the duty to release an expired lease has been established in Texas case law. In *Kidd v. Hoggett,* this court recognized the duty to release of record an expired oil and gas lease. 331 S.W.2d 515, 517 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.); *Witherspoon v. Green,* 274 S.W. 170, 171 (Tex.Civ.App.— Dallas 1925, no writ). Where the duty is imposed by the lease, the action for recovery is based on contract. *Kidd,* 331 S.W.2d at 517. At trial, Holman pled that the duty to release was based on contract, and not on a common law duty. The specific issue which we face in the present case is whether a contractual duty to release was established in the liquidated damages clause of the oil and gas lease executed between the parties. This issue is one of first impression.

Acceptance by the lessor of a deed of surrender or a release is not necessary so long as the lessee executes and delivers a release. *Superior Oil Co. v. Dabney,* 147 Tex. 51, 211 S.W.2d 563, 566 (Tex.1948). A written release is only necessary where the lease requires one or where the lease has been recorded. 2 SUMMERS, THE LAW OF OIL AND GAS, § 337 at 385 (2d ed.1958).

In the present case, the parties disagree on the meaning of "any release" as it is used in the liquidated damages clause. We are mindful that in determining the meaning of this term, we cannot constrain our analysis to that clause alone. Instead, we must consider the whole lease and seek to harmonize and give effect to all provisions. *See Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (Tex.1951).

Under the original lease, the primary term is established in the second paragraph and states:

> Subject to the specific termination, partial termination and other provisions herein contained, this lease shall be for a primary term of FIVE (5) years from this date (herein called the "primary term") and as long thereafter as oil and/or gas in paying quantities is produced and sold from said land hereunder.

The addendum to the original lease begins with the following paragraph:

> *Upon the expiration* of the primary term hereof, this lease shall terminate as to all lands covered hereby, save and except as to all lands included within the proration units established and approved by the Railroad Commission of Texas for each well from which oil and/or gas is being produced in paying quantities and save and except for all lands then included within the drilling units upon which operations for drilling are being prosecuted [sic] hereunder.

(Emphasis added). Further down in the addendum, a paragraph encompassing an express release clause and a liquidated damages clause are also included. That paragraph states the following:

*After the end of the primary term,* Lessee, its successors and assigns, shall deliver a release to the Lessor within ninety (90) days of plugging and abandoning any well located on the leased premises. Such release shall cover such portions of the leased premises as were included within the proration unit established or drilling unit established as the case may be for such well. If the Lessee withholds *any release,* Lessor shall be entitled to reasonable attorney's fees and costs sustained by the Lessor in an attempt to obtain *any release,* plus an additional amount of liquidated damages of one dollar ($1.00) per acre per month for each acre of land that is not *timely released.*

(Emphasis added).

█ Appellants contend the use of "any release" in the liquidated damages clause refers to the release of all leases held of record which expired at the end of the primary term. It is their assertion that "any release" is not limited to those releases addressed by the express release clause which immediately precedes the liquidated damage clause.

Appellee, on the other hand, contends the releases executed essentially released nothing as their interest in the land expired on December 16, 1994. In addition, Meridian asserts that the connection of the express release and liquidated damages clause in the same paragraph reflects that the clauses were meant to reference one another. Meridian contends the liquidated damages clause would only be invoked if the leases were not timely released under the express release clause only. For the reasons set out below, we agree with Meridian.

█ We begin with the proposition that the issue of whether an agreement is ambiguous is a question of law to be determined by the court. *America's Favorite Chicken v. Samaras,* 929 S.W.2d 617, 622 (Tex.App.—San Antonio 1996, writ denied); *R & P. Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). We are guided by the standard rule of construction that when parties have entered into a valid lease for oil and gas purposes, we do not have the power to place a different inter-

pretation upon a contract and its terms which the parties did not express. Simply, when construing the provisions of an oil and gas lease, we are limited to the intention of the parties as expressed in the lease. *Killam Oil Co. v. Bruni,* 806 S.W.2d 264, 266 (Tex. App.—San Antonio 1991, writ denied); *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–28 (Tex.1981). The lease alone is deemed to express the intent of the parties. *Id.* Like a contract, where ambiguity does not exist, the lease terms used should be give their plain, ordinary and precise meaning. *See Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

This first paragraph of the lease clearly states that leases on property which have not undergone activity, such as wells, proration units, and drilling units, automatically expire with the passing of the primary term. In this case, the primary term ran for five years and expired automatically on December 16, 1994. No other clause in the original lease or the addendum addresses the existence of leases which have simply expired and in which no activity has been undertaken by the lessee. We conclude that this clause is the only express provision which refers to leases in which the lessor has not undertaken any activity.

Contrastingly, the express release clause expressly addresses those leases in which activity has taken place. By the terms of the express release clause, Meridian is bound to deliver a release to the lessor within 90 days of plugging or abandoning any well located on the leased premises. Within this same paragraph, a liquidated damages clause is inserted. Under the liquidated damages clause, Meridian must pay the lessor a reasonable amount of attorney's fees and costs and an additional $1 a month per acre for an untimely release. Our focus centers on the terms "any release."

█ We refuse to hold that "any release" would encompass the release of all leases which expire with the passing of the primary period, regardless of whether activity has taken place. We reach our decision for three reasons. First, the duty to release expired leases in which no activity has occurred is not

expressly provided for under the terms of the lease. Appellant concedes this. To find that such a duty in fact existed would imply a term of the agreement which the parties deemed unnecessary to express. *See HECI Exploration Company et al. v. Russell H. Neel, Sr.,* 42 Tex Sup.Ct. J. 93, 98, 982 S.W.2d 881, 888 (1998) (refusing to hold that an implied covenant to provide notice of the intent to sue existed in an oil and gas lease). Texas case law has consistently held that courts cannot make contracts for the parties. *Id.; Gulf Prod. Co. v. Kishi,* 129 Tex. 487, 103 S.W.2d 965, 968 (App.1937) (quoting *Freeport Sulphur Co. v. American Sulphur Royalty Co. of Texas,* 117 Tex. 439, 6 S.W.2d 1039 (Tex.1928)). A term or covenant will not be implied unless it appears from the express terms of the contract that such term or covenant was clearly contemplated. *Neel,* 42 Tex. Sup.Ct. J. at 98, 982 S.W.2d at 888.

▮ Such is the situation in the case at bar. We find that the only express provision governing leases which have simply expired is addressed in the first paragraph of the lease addendum. If we were to follow appellants's argument and hold the liquidated damages clause imposed the duty to release any lease, we would be doing so under implication and not by the express intent of the parties. Second, we address appellant's argument that Meridian's delay in releasing the leases was a cloud upon the title even in light of the leases's expiration on December 16, 1994. In other words, appellants argue that the failure to release under any circumstances is a cloud on the title to property. In support of this argument appellants rely on the case of *Witherspoon v. Green,* 274 S.W. 170 (Tex.Civ.App.—Dallas 1925, no writ). In *Witherspoon,* appellant, C.L. Witherspoon, executed a drill or pay lease on March 22, 1919, which was then assigned to the appellee, Harry Green. Under its original terms, the lease was to remain in force for five years or as long thereafter if oil or gas was produced. Green's interest, however, would terminate on March 22, 1920 if a well was not drilled. A one year deferment could be obtained when the appellee paid $300 to the appellant in lieu of drilling. By March 22, 1920 a well was not drilled, but Witherspoon agreed to extend the lease one more year to March 22, 1921, without a rental payment. When Green requested a second extension on March 22, 1921, Witherspoon refused. Once again no rental payment was made. According to the original terms, the lease would expire in the event of non-payment. On January 22, 1922, Green executed a release. The court held that the delay in Green's release created a cloud on Witherspoon's title because the assignment, which was duly recorded, carried notice that appellee owned an interest in the land. *Id.* at 171. Such notice, the court held, constituted an apparent interest in the land. *Id.*

▮ Unlike the case in *Witherspoon v. Green,* the case before us involves an "unless" lease. It is well settled that under the terms of an "unless" lease, the failure to begin a well or pay delay rentals, *ipso facto,* terminates the lessee's interest. *Kincaid v. Gulf Oil Corp.,* 675 S.W.2d 250, 255 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (citing *W.T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27, 30 (Tex. 1929)). The termination date of an "unless" lease serves to mark the limit of the estate granted. *See Cox v. Miller,* 184 S.W.2d 323, 327 (Tex.Civ.App.—Eastland 1944, writ ref'd) (stating that an "unless" lease, unlike forfeiture, does not require the existence of a condition subsequent to terminate the lease). The interest maintained is a determinable fee simple which, once terminated, automatically reverts interest to the lessor without any action on behalf of the lessor. *Stanolind Oil & Gas Co. v. Newman Brothers Drill. Co.,* 157 Tex. 489, 305 S.W.2d 169, 175 (1957).

By the terms of the lease, any interest which Meridian may have maintained in the leased property automatically expired on December 16, 1994. Because of the existence of an "unless" lease in this case, Meridian's interest in the land automatically reverted back to the appellants. As such, Meridian's interest, actual and apparent, ceased on December 16, 1994. A reading of the terms of the lease filed of record would indicate that Meridian no longer maintained an interest. This fact clearly distinguishes the interest which Green held in *Witherspoon.*

In *Witherspoon,* the lease was not an "unless" lease and did not terminate until March 22, 1924. These facts are important for two reasons. First, Green's ten month delay in executing a release occurred within the primary term. In the present case, Meridian executed a release after the leases terminated. Second, the drill or pay lease utilized in *Witherspoon* provided for the payment of delay rentals in the event a well was not commenced. Any individual reviewing the record would not know if the lessee was making payments in place of drilling. Thus, although Green's actual interest may have expired by the terms of the lease, his apparent interest still existed of record. This is clearly not the situation in the present case, where Meridian's interest no longer existed of record. A third party reviewing the public record would be on notice that Meridian no longer maintained an interest after December 16, 1994.

Third, notwithstanding a determination that the duty to release did not exist, we would be reluctant to hold that liquidated damages could be assessed. Although a duty to release has been acknowledged in case law, courts have refused to hold a lessee liable for this duty when the lessor has been unable to provide evidence of a specific loss. *See Modern Exploration, Inc. v. Maddison,* 708 S.W.2d 872, 877 (Tex.App.—Corpus Christi 1986, no writ). In *Maddison,* the reviewing court refused to hold that the duty to release, whether established in contract or by common-law, created a cause of action for damages in the absence of the loss of a specific sale. *Id.* The establishment of the duty to release, by itself, was not sufficient to recover damages awarded by the jury. *Id.* The court, however, did not expand on its reasoning.

With regards to the present case, we would apply the same standard. In their pleadings, Holman and the other lessors did not assert that a specific sale was lost. In each of the lessors's affidavits, each stated they were ready and willing to lease again, but were unable to lease the property from December 14, 1994 to the time the release was noted in the public records. However, none of the summary judgment evidence proves the appellants suffered the loss of a specific sale.

## Conclusion

Based on the reasons stated above, we hold that a duty to release a lease in which no activity has occurred was not established by the leases's liquidated damages clause. Any release by Meridian of such property would have essentially released nothing. For these reasons, we affirm the judgment of the trial court.